FRANKI FOUNDATION COMPANY *vs.* STATE TAX
COMMISSION.

Suffolk.   February 9, 1972. — April 19, 1972.

Present: CUTTER, SPIEGEL, REARDON, QUIRICO, & BRAUCHER, JJ.

</div>

*Taxation,* Manufacturing corporation.   *Words,* "Manufacturing."

A corporation making "pressure injected footings" at sites where buildings and other structures were to be erected was not a manufacturing corporation within the meaning of G. L. c. 58, § 2. [620–621]

APPEAL from a decision of the Appellate Tax Board.
*Acheson H. Callaghan, Jr.,* for the taxpayer.
*Robert H. Quinn,* Attorney General, *& Daniel J. Johnedis,* Assistant Attorney General, for the State Tax Commission, submitted a brief.

QUIRICO, J.   This is an appeal by the Franki Foundation Company (Franki), a Delaware corporation, under

G. L. c. 58A, § 13, from a decision of the Appellate Tax Board (board) upholding the action of the State Tax Commission under the provisions of G. L. c. 58, § 2, as appearing in St. 1965, c. 696, § 1, denying Franki's request for classification as a foreign manufacturing corporation for the year 1969. See G. L. c. 63, § 42B, as amended through St. 1937, c. 383, § 2. The record on appeal before us includes the board's detailed findings of fact and its opinion filed pursuant to Franki's written request therefor as authorized by G. L. c. 58A, § 13, as amended.

The sole issue raised by this appeal is whether Franki's operations within the Commonwealth, as described in the board's subsidiary findings of fact, were of a nature that required the board to decide as a matter of law that they constituted manufacturing within the meaning of that word as used in G. L. c. 58, § 2, as amended. Franki contends that the board's conclusion that "[i]nsofar as it is a question of fact, . . . [Franki] is engaged in construction and not in manufacturing," is error "because this 'finding' is inconsistent with the Board's subsidiary findings of fact." Franki also claims error in the board's denial of two requests for rulings that it is a "manufacturing corporation within the meaning of G. L. c. 58, § 2," and a "foreign manufacturing corporation within the meaning of G. L. c. 63, § 42B."

Whether Franki is classified as a foreign manufacturing corporation with reference to its Massachusetts operations has a significant bearing on its tax liability to the Commonwealth and the cities and towns thereof. If it is a manufacturing corporation, its machinery is exempted by G. L. c. 59, § 5, Sixteenth (3), as appearing in St. 1957, c. 541, from the local taxes which would otherwise be assessed thereon by cities and towns under G. L. c. 59, § 2. Further, by § 5, Sixteenth (5), the classification of Franki as a manufacturing corporation by the commissioner of corporations and taxation, the commission or the board would be binding on the local assessors. "The exemption provided by § 5, Sixteenth,

is not a true exemption from taxation but is an integral part of the method of taxation applicable to all the property of a corporation subject to that section. Section 5, Sixteenth, read with the relevant sections of G. L. c. 63, merely determines which governmental unit may impose a tax upon, or measured by, particular property. Property not taxed to a corporation under § 5, Sixteenth, is included in the measure of the excise imposed on the corporation under G. L. c. 63, and thus is indirectly taxed." *Assessors of Holyoke* v. *State Tax Commn.* 355 Mass. 223, 234. *Assessors of Boston* v. *Commissioner of Corps. & Taxn.* 323 Mass. 730, 733.

We summarize the facts found by the board on the nature of Franki's operations in Massachusetts. Franki is in the business of making "pressure injected footings" (footings) at sites where buildings and other structures are to be erected. The footings are a type of foundation unit designed and used to support the weight of the proposed superstructure. They are made at predetermined positions on the construction site. The basic materials used in making them are concrete or the ingredients for concrete, reinforcing steel and, in some instances, steel pipe.

In making such a footing Franki uses a machine designed for that purpose. The machines are of varying sizes but they all operate on the same principle. Each includes a heavy base or platform which in turn supports (a) its own engines or other power equipment and (b) a vertical metal structure called a "lead." The lead holds a heavy metal tube in position before it is driven into the ground, and guides it as it progresses into the ground. It also has a function in the raising and dropping of a heavy metal ram inside the tube.

A quantity of the concrete or other material to be used in making the footing is dropped into the bottom of the tube and there tamped by the ram to form a tight plug. The ram is then dropped from greater heights forcing the tube and its contents into the ground at the prescribed footing location, displacing and compacting

the soil around it as it goes down. When the tube has reached its desired depth, it is anchored to the machine to prevent it from penetrating farther. Repeated blows by the ram then break the plug friction and drive the plug partially out of the bottom of the tube. Additional material is fed into the top of the tube and successively forced out of the bottom of the tube into the soil by ram blows of 140,000 foot pounds. This results in the formation of a bulbous base for the footing at the bottom of the tube. The addition and compaction of material in the tube continues until the top of the footing reaches the desired level. Thereafter the tube is withdrawn from the ground. In some instances a metal casing is used inside the tube and is left in the ground as a part of the completed footing.

For the purpose of this decision it is not necessary to describe the detailed engineering formulas used by Franki to determine the number, size, depth and other characteristics of the footings required for the structure to be supported thereby.

The dominant word in the statutes which control the decision in this case is "manufacturing," but the statutes do not define the word. In such a case, "the natural import of words according to the ordinary and approved usage of the language when applied to the subject matter of the act, is to be considered as expressing the intention of the Legislature." *Boston & Maine R.R.* v. *Billerica,* 262 Mass. 439, 444. Also helpful in determining the intention of the Legislature is the history of the statute to be interpreted.

The exemption of machinery of a manufacturing corporation from local taxation under the present provisions of G. L. c. 59, § 5, Sixteenth (3), stems from § 1 of St. 1936, c. 362, entitled, "An Act exempting the machinery of manufacturing corporations from local taxation and changing the methods of determining certain corporation taxes and of distributing certain taxes." That statute was enacted pursuant to 1936 House Doc. No. 143, entitled, "Report of the Special Commission Relative

to Taxation of Tangible and Intangible Property and Certain Related Matters." One of the recommendations made by the special commission was the elimination of municipal taxes on "machinery used in manufacturing." It is evident from a reading of the commission's entire report that it used the word "manufacturing" in relation to the production of goods in "mills and factories."[1] This purpose was implicitly recognized by this court in *Assessors of Boston* v. *Commissioner of Corps. & Taxn.* 323 Mass. 730, where we said (p. 741) : "The statutes granting exemption from the local tax on the machinery of corporations engaged in manufacturing must be fairly construed and reasonably applied in order to effectuate the legislative intent and purpose to promote the general welfare of the Commonwealth by inducing new industries to locate here and to foster the expansion and development of our own industries, so that the production of goods shall be stimulated, steady employment afforded to our citizens, and a large measure of prosperity obtained."

The words "manufacture," "manufacturer," and "manufacturing" appear in many provisions of the

---

[1] The commission's emphasis on "mills and factories" is illustrated from the following excerpts from 1936 House Doc. No. 143, (pp. 5–6) : "Long regarded as a great industrial State, in which prosperous cities and thriving towns found their inhabitants busily employed in mills and factories, few there were who ever conceived the possibility of such a decline in industrial manufacturing as has occurred during the last fifteen years. Idle factories and abandoned mills are the silent and convincing evidence of the disaster that has come upon our people. We do not attempt to give all the reasons for this loss of industry, but it is clear that among the many causes high taxes play an important part. . . . It is imperative, therefore, that the State shall provide sufficient relief to save the factories and mills now operating from closing their doors or from seeking locations in other States. One of the elements of excessive costs entering into production in this State is the tax upon machinery. Under existing laws, such machinery used in manufacturing is taxed at the local property rate. This rate . . . has become so burdensome that it is partly responsible for the transfer of manufacturing activities to other States. Here then is a practical solution in part to 'an economic problem that demands an immediate solution.' Eliminate the tax on machinery used in manufacturing. The effect of such action undoubtedly will be to retain within the State the factories now operating, the possible reopening of factories now closed, and the attracting of new industries to locations within our borders."

General Laws.   They may be found, for example: in chapters 59, 63, 64C and 64H relating to taxation; in chapter 148 relating to fire prevention; in chapter 149 relating to labor and industries; and in a number of our health and penal statutes.   There is no standard definition or interpretation which can be given to those words whenever they are used by the Legislature in enacting statutes.   Each statute must be interpreted in its own setting and with the benefit of its legislative history, if available.

This court has defined the word "manufacturing" in two decisions involving the applicability of G. L. c. 59, § 5, Sixteenth.   In *Commissioner of Corps. & Taxn.* v. *Assessors of Boston,* 321 Mass. 90, 94, we said: "We must first inquire whether . . . [the corporations] were engaged in manufacturing in this Commonwealth.   Manufacture ordinarily and commonly denotes the process of transforming raw or finished materials by hand or machinery, and through human skill and knowledge, into something possessing a new nature and name and adapted to a new use."   In *Assessors of Boston* v. *Commissioner of Corps & Tax.* 323 Mass. 730, 740, we quoted the following language from *Boston & Maine R.R.* v. *Billerica,* 262 Mass. 439, 444–445, "Involved in the conception of manufacture is the implication of change wrought through the application of forces directed by the human mind, which results in the transformation of some preëxisting substance or element into something different, with a new name, nature or use."   After seemingly approving that definition, we went on to say: "The term manufacturing has no technical meaning, . . . and definitions are not of much assistance in cases lying close to the line between nonmanufacturing and manufacturing activities."

We recognize that, under the definitions quoted above, the transformation of "raw or finished materials by hand or machinery" into materials, supplies, equipment or component parts for ultimate use, application, installation or incorporation in a completed building or other

structure constitutes manufacturing.[2]   However, we do not understand such definitions to mean that the ultimate use, application, installation or incorporation of the manufactured product in the erection of the building or structure is itself a manufacturing process.   There is nothing in the language of the several statutes relating to the exemption of machinery of manufacturing corporations from local taxation or in the history of the statutes to indicate that they were intended to apply to the construction industry.

While it may be difficult in some cases to decide where the manufacturing process ends and the construction process begins, this is not such a case.   In our view no part of Franki's activity with reference to footings is a manufacturing process, and all of it is an integral part of the continuing process of erecting the building which the footings are intended to support.   We see no difference between the footings which Franki puts underground at the construction site and the remainder of the building which another contractor completes above ground on those footings. Indeed the portion of the building which is above ground may be made entirely of concrete and reinforcing steel as are Franki's footings. In such a case Franki's activity which produces the underground footings is no more manufacturing than is that of the other contractor which produces the building above ground.   Franki's tamping of the concrete

---

[2] This is illustrated by our statement in *Wakefield Ready-Mixed Concrete Co. Inc.* v. *State Tax Commn.* 356 Mass. 8, 11, that the action of a concrete mixer truck in mixing concrete and keeping it fluid while being delivered from a batching plant to the jobsite was a "manufacturing process [which] continues until the concrete leaves the mobile mixer."   That case involved what is now G. L. c. 64H, § 6 (s), inserted by St. 1967, c. 757, § 1, which excluded from the impact of the sales tax "[s]ales of machinery, or replacement parts thereof, used directly in . . . an industrial plant in the manufacture, conversion or processing of tangible personal property to be sold."   However, that decision does not support Franki's claim of exemption from local taxes on its machinery not only because of the difference in the statutes involved, but also for the more important reason that it appears from the record that Franki used concrete or other materials after they had been "manufactured" by someone else but did not itself manufacture them.

by means of a ram does not require a different conclusion. That is not unlike many other instances of the use or application of force or pressure, whether for the driving or compacting of materials or for other purposes, in the course of erecting a building.

The briefs of both parties cite many decisions from other jurisdictions on the question whether a process related directly or indirectly to the erection of a building or structure is a manufacturing process. They also point out similarities or dissimilarities as to facts or statutes involved in those cases and in the case before us. Each party naturally emphasizes those cases which support its contentions and attempts to distinguish those which support the contentions of the other party. The cases involve such a variety of facts and statutes that it would contribute nothing useful to our body of law to try to analyze or otherwise discuss them. We base our decision solely on our determination of the legislative intent as indicated by the history, objectives and language of the statutes involved in this case, uninfluenced by decisions in other jurisdictions.

The decision of the Appellate Tax Board is affirmed with costs of appeal to the State Tax Commission.

<div align="right"><em>So ordered.</em></div>