## JOSEPH T. ROSSI CORPORATION *vs.* STATE TAX COMMISSION.

Suffolk.    September 16, 1975. — December 5, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Taxation,* Manufacturing corporation.   *Words,* "Manufacturing."

A foreign corporation conducting a sawmill operation on land owned
  or leased by it in Massachusetts, involving cutting down trees,
  hauling logs, stripping bark, sawing and resawing the logs in
  various sizes and packaging the lumber for shipment, entitled the
  corporation to be classified as a "manufacturing corporation"
  under G. L. c. 58, § 2, and as a "foreign manufacturing corpora-
  tion" under c. 63, § 42B.   [180-182]

APPEAL from a decision of the Appellate Tax Board.

The case was submitted on briefs.

*Francis X. Bellotti,* Attorney General, *& Howard
Whitehead,* Assistant Attorney General, for the State Tax
Commission.

*David J. Saliba* for Joseph T. Rossi Corporation.

REARDON, J.   The question presented by this case is
whether the Appellate Tax Board (board) was correct in
concluding that the Joseph T. Rossi Corporation (Rossi) is
a "manufacturing corporation" pursuant to G. L. c. 58,
§ 2.   The decision of the board would qualify Rossi
under G. L. c. 59, § 5, Sixteenth (3), for certain exemp-
tions from local taxation.   We have before us the findings
of fact and report, and the opinion of the board.   Rossi's
application to the State Tax Commission for classification
as a manufacturing corporation had been denied and an
appeal was thereupon taken to the board which, on
October 30, 1974, decided in Rossi's favor.   The commis-
sion appealed under G. L. c. 58A, § 13.

Rossi is a Connecticut corporation engaged in the production of various wood products and having a principal place of business at Higganum, Connecticut. As part of its business it conducts a sawmill operation at Williamsburg, Massachusetts, on land some of which it owns and some of which it leases. There it cuts down trees, hauling the logs by truck from the cutting area to the sawmill where a debarking machine strips the bark from the logs. They are then sawed into various sizes and conveyed to an edging machine which resaws the lumber into smaller sizes. The lumber is then packaged and made ready for shipment. The bark, woodchips and sawdust are also sold. Rossi cuts 1,500,000 to 1,700,000 board feet annually and employs about fifteen persons in its Massachusetts operations.

We recently discussed the significance of the classification problem, which confronts us here, in *Franki Foundation Co.* v. *State Tax Comm'n*, 361 Mass. 614, 615-616 (1972), in the following terms: "Whether . . . [a corporation] is classified as a foreign manufacturing corporation with reference to its Massachusetts operations has a significant bearing on its tax liability to the Commonwealth and the cities and towns thereof. If it is a manufacturing corporation, its machinery is exempted by G. L. c. 59, § 5, Sixteenth (3), as appearing in St. 1957, c. 541, from the local taxes which would otherwise be assessed thereon by cities and towns under G. L. c. 59, § 2. Further, by § 5, Sixteenth (5), the classification of . . . [a corporation] as a manufacturing corporation by the commissioner of corporations and taxation, the commission or the board would be binding on the local assessors. 'The exemption provided by § 5, Sixteenth, is not a true exemption from taxation but is an integral part of the method of taxation applicable to all the property of a corporation subject to that section. Section 5, Sixteenth, read with the relevant sections of G. L. c. 63, merely determines which governmental unit may impose a tax upon, or measured by, particular property.

Property not taxed to a corporation under § 5, Sixteenth, is included in the measure of the excise imposed on the corporation under G. L. c. 63, and thus is indirectly taxed.' *Assessors of Holyoke* v. *State Tax Commn.* 355 Mass. 223, 234 [1969]. *Assessors of Boston* v. *Commissioner of Corps. & Taxn.* 323 Mass. 730, 733 [1949]."

We are not greatly helped in determining the G. L. c. 58, § 2, classification by the statutory definitions contained in G. L. c. 63, §§ 38C and 42B, since they merely provide that a "manufacturing corporation" is one "engaged in manufacturing." [1]

This court has previously attempted definitions of the word "manufacturing" in decisions involving the applicability of the tax exemption enacted in St. 1936, c. 362, § 1, and now contained in G. L. c. 59, § 5, Sixteenth (3). For example, in *Assessors of Boston* v. *Commissioner of Corps. & Taxation,* 323 Mass. 730, 740 (1949), we cited with apparent approval the language used in *Boston & Maine R.R.* v. *Billerica,* 262 Mass. 439, 444-445 (1928): "Involved in the conception of manufacture is the implication of change wrought through the application of forces directed by the human mind, which results in the transformation of some preexisting substance or element into something different, with a new name, nature or use." See *Commissioner of Corps. & Taxation* v. *Assessors of Boston,* 321 Mass. 90, 94 (1947), for similar language. However, we also noted that "manufacturing" is not a precise, technical term and that formal definitions "are not of much assistance in cases lying close to the line between nonmanufacturing and manufactur-

---

[1] General Laws c. 63, § 42B, relates to "foreign manufacturing corporation[s]" and thus is the relevant section here. However, the pertinent language in § 42B is identical with that in § 38C governing "domestic manufacturing corporation[s]," and the standards for determining whether a corporation is "engaged in manufacturing" are the same under both sections. See *Assessors of Boston* v. *Commissioner of Corps. & Taxation,* 323 Mass. 730 (1949); *Commissioner of Corps. & Taxation* v. *Assessors of Boston,* 321 Mass. 90 (1947).

ing activities." *Assessors of Boston* v. *Commissioner of Corps. & Taxation, supra* at 740. Rossi's sawmill operations present such a close case.

In previous decisions we have not directly addressed ourselves to the precise issue of this case. In *Commissioner of Corps. & Taxation* v. *Assessors of Boston,* 324 Mass. 32 (1949), we did hold that a company processing mahogany logs into veneer and lumber was engaged in manufacturing within the meaning of G. L. c. 63, § 38C. We did not address the question whether sawing the logs into lumber without more would also constitute manufacturing. In *Ingram* v. *Cowles,* 150 Mass. 155, 157 (1889), Chief Justice Holmes, in dicta, expressed some doubt whether the sawing of logs into lumber should be considered manufacturing. He was concerned there with a tax statute with language and purpose differing from those of the tax exemption provisions enacted in 1936 (c. 362, § 1), which we are concerned with here. We have previously emphasized that the words of the statute should be accorded a "flexible meaning." *Commissioner of Corps. & Taxation* v. *Assessors of Boston,* 324 Mass. 32, 36 (1949). We have stated the broad purpose of the statute to be a promotion of the general welfare by inducing new industries to locate in Massachusetts and by fostering an expansion and development of our own industries. *Assessors of Boston* v. *Commissioner of Corps. & Taxation,* 323 Mass. 730, 741 (1949). We have further stressed that the statute should be construed, if reasonably possible, to effectuate this legislative intent and purpose and that "[t]he words 'engaged in manufacturing' are not to be given a narrow or restricted meaning." *Id.* at 748-749. See *Assessors of Swampscott* v. *Lynn Sand & Stone Co.,* 360 Mass. 595, 598 (1971). In recognition of the statutory purpose, we have held that processes which themselves do not produce a finished product for the ultimate consumer should still be deemed "manufacturing" for the purposes of this tax exemption so long as they constitute an essential and integral part of a

total manufacturing process. *Assessors of Boston v. Commissioner of Corps. & Taxation,* 323 Mass. 730, 748 (1949).

In this case Rossi cuts down standing timber which is in the nature of a raw material and, through the use of specialized machinery and the application of human skill and knowledge, converts it into cut lumber of different sizes, a product more refined and specialized in use than the raw material. The process of converting the logs into lumber is more than the mere extraction, packaging and transportation of a raw material. A new product, different in character and more useful and marketable than the raw material, is produced. Applying the principles to which we have alluded, we conclude that the production of cut lumber, to the extent disclosed by the record, entitled Rossi to be classified as a "manufacturing corporation" within the meaning of G. L. c. 58, § 2, and a "foreign manufacturing corporation" within the meaning of G. L. c. 63, § 42B.

This conclusion is supported in our view by decisions from other jurisdictions, construing their own tax statutes to be sure but holding that operating a sawmill does constitute "manufacturing." *State v. Grayson Lumber Co.,* 271 Ala. 35 (1960). *Stearns Coal & Lumber Co. v. Thomas,* 295 Ky. 808 (1943). *State ex rel. Browne v. A.W. Wilbert's Sons Lumber & Shingle Co.,* 51 La. Ann. 1223 (1899). *Benedict Bros. v. Davidson County,* 110 Tenn. 183 (1901). See *In re Arkansas Cypress Shingle Co.,* 74 Ark. 28 (1905); *Desjardins v. Jordan Lumber Co.,* 124 Me. 113 (1924).

*Decision of the Appellate Tax Board affirmed.*