FIRST DATA CORPORATION *vs.* STATE TAX COMMISSION.

Suffolk.    October 6, 1976. — December 8, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN,
& WILKINS, JJ.

*Taxation,* Manufacturing corporation.    *Statute,* Construction.    *Words,*
"Manufacturing."

Findings of the Appellate Tax Board with respect to a company op-
erating an electronic digital computer system warranted a conclusion
that the company was not a "domestic manufacturing corporation"
within the meaning of G. L. c. 63, § 38C.    [446-448]

APPEAL from a decision of the Appellate Tax Board.
*Roy N. Freed* for the taxpayer.
*Steven A. Rusconi,* Assistant Attorney General, for the
State Tax Commission.

KAPLAN, J.    General Laws c. 63, § 38C, as appearing in
St. 1970, c. 634, § 4, defines a "domestic manufacturing
corporation," rather uninformatively, as one which is "en-
gaged in manufacturing." Such a corporation is entitled to
exemption of its machinery from certain local taxes. G. L.
c. 59, § 5, Sixteenth (3) (*a*).[1] Classification of a corpora-
tion is first made by the Commissioner of Corporations
and Taxation, with a ladder of review reaching to this
court. G. L. c. 58, § 2. In the present case First Data Cor-
poration (taxpayer), which operates an electronic digital
computer system in Waltham, was refused the classifica-
tion by the Commissioner. It had no better result from the
State Tax Commission; appealed to the Appellate Tax

---

[1] It has been pointed out that the exemption is not a true one be-
cause property escaping taxation under the cited statute is included in
the measure of the excise on corporations. *Assessors of Holyoke* v.
*State Tax Comm'n,* 355 Mass. 223, 234 (1969).

Board (board) without success; and took its further appeal here.

The appeal to the board was under the formal procedure, and we have the board's findings of fact, report, and opinion. The type of business carried on by the taxpayer is now well known. It operates a "commercial on-line, real-time computer time-sharing system," and the exemption, if available, would comprise two computers and accessories of a value estimated (by the taxpayer) at $2,300,000. Typically, a customer from his "terminal" transmits over telephone lines to the computer electrical impulses which, as "stored" in the computer on magnetized cores, correspond to data and information supplied by the customer. A customer ordinarily will not want merely to retrieve from the computer the information stored, but to have the computer work with and manipulate the information to some purpose. The particular command to the computer is in the form of a program or algorithm which leads the mechanism to the desired results, also reflected on magnetized cores. Those results are usually transmitted by electrical impulses carried on telephone lines back to the customer's terminal for print-out (or may be delivered to the customer as print-out or in the form of magnetic tape).

A variety of purposes may be served by these processes: for example, they may produce payroll calculations, for which basic data have been earlier supplied; they may write specifications for steel girders in bridge construction, the conditions, desiderata, and other relevant matters having been furnished in effect as a statement of the problem to be solved according to programmed instructions.

What has just been described in abbreviated fashion represented the great bulk of the taxpayer's operations. (The taxpayer also used the computer on customers' orders to prepare and print library cards and horoscopes, but these were a negligible part of the business.) Reviewing and analyzing these operations, the board found, "[i]nsofar as it is a question of fact," that the taxpayer "is not entitled to be classified as a 'manufacturing corporation'"; that it "is essentially a nonmanufacturing corporation that

renders a service to customers by supplying them with information or intelligence, for a charge."

Decisions of the board are "final as to findings of fact" (G. L. c. 58A, § 13), and thus the question on this appeal is whether a contrary conclusion — that the taxpayer is a manufacturing corporation — is required as matter of law (see *Franki Foundation Co.* v. *State Tax Comm'n,* 361 Mass. 614, 615 [1972]) ; otherwise stated, the question is whether a contrary conclusion is not merely a possible but a necessary inference from the findings. See *Ultronic Syss. Corp.* v. *Assessors of Boston,* 355 Mass. 284, 287 (1969). We answer the question in the negative and affirm the board's decision. Indeed, we need not so guard our judgment, for we consider the board's view to be quite reasonable.

The taxpayer invokes a standard or commonplace definition or description of "manufacture" formulated under the statute and suggests that with some stretching here and there it may cover the computer operations. Thus in *Commissioner of Corps. & Taxation* v. *Assessors of Boston,* 321 Mass. 90, 94 (1947), the court said: "Manufacture ordinarily and commonly denotes the process of transforming raw or finished materials by hand or machinery, and through human skill and knowledge, into something possessing a new nature and name and adapted to a new use."[2] If the information fed into the computer is thought of as raw material which is transformed by machinery into information possessing a new nature, then the definition holds. The taxpayer also edges up to the definition by speaking of the flow of one stream of electrons into the computer, and the flow out of another. If it be objected that the definition contemplates corporeal or tangible input and output, the taxpayer can cite cases that may read to the contrary — those which consider the production of electricity to involve manufacture. See *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 565 (1956); *Boston*

---

[2] See a like statement in *Boston & Me. R.R.* v. *Billerica,* 262 Mass. 439, 445 (1928).

First Data Corp. *v.* State Tax Commission.

*& Me. R.R.* v. *Billerica,* 262 Mass. 439, 449 (1928); *People ex rel. Brush Elec. Mfg. Co.* v. *Wemple,* 129 N.Y. 543, 552-557 (1892). Finally, the taxpayer urges us to acknowledge the emergence of new industry which mechanizes the development of information as earlier industry mechanized operations with grosser stuff; and suggests that if it is the purpose of the exemption to encourage the growth of industry and spread of employment, then the computer industry is as proper a candidate for such a preference as any of the more conventional manufacturing establishments.

The argument makes some appeal, especially as we have said repeatedly that the statutory language is not to be read in a restrictive way. See *Joseph T. Rossi Corp.* v. *State Tax Comm'n,* 369 Mass. 178, 181-182 (1975); *Commissioner of Corps. & Taxation* v. *Assessors of Boston, supra,* 321 Mass. at 97. So also the taxpayer should not be thought foreclosed by a recent decision referring to the computer functions there involved as "services," for the context was different. *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc., ante,* 117, 128-129 (1976).[3]

Nevertheless, the argument for holding the taxpayer to be a manufacturing corporation for purposes of the exemption is felt to be unconvincing. As the statute does not itself effectively define "manufacturing," we have said that the Legislature should be supposed to have adopted the common meaning of the word, as assisted by a consideration of the historical origins of the enactment. See *Franki Foundation Co.* v. *State Tax Comm'n,* 361 Mass. at 617; *Commissioner of Corps. & Taxation* v. *Assessors of Boston,* 321 Mass. at 97. Here the board could not be held necessarily mistaken in thinking that "manufacturing," according to ordinary acceptation, does not include the

---

[3] In that case we were in the field of restraint of competition at common law.

For a miscellany of cases in various tax contexts, see Annot., What Constitutes Manufacturing and Who is a Manufacturer Under Tax Laws, 17 A.L.R.3d 7 (1968).

transmission or manipulation of knowledge or intelligence. This interpretation seems to us bolstered by a reference to history, which shows that the stress in 1936 was on encouraging by the exemption the "mills and factories" that were then falling into decline. See *Franki Foundation, supra* at 618;[4] *Fernandes Super Mkts., Inc.* v. *State Tax Comm'n, ante,* 318, 321 (1976). The cogent analogy, moreover, is not to the production of electricity but to the conversion of human sound into electrical impulses which are in turn converted into recognizable sound at a receiver, as happens in telephones; we have held the machinery relevant to this telephonic process to be not "employed in any branch of manufacture." *Assessors of Springfield* v. *Commissioner of Corps. & Taxation,* 321 Mass. 186, 190-192 (1947). *Assessors of Boston* v. *Commissioner of Corps. & Taxation,* 323 Mass. 730, 741 (1949). See *Barron* v. *Boston,* 187 Mass. 168, 171-172 (1905). Cf. *Meredith Corp.* v. *State Tax Comm'n,* 23 Ariz. App. 152 (1975); *Commonwealth ex rel. Luckett* v. *WLEX-TV, Inc.,* 438 S.W.2d 520 (Ky. 1969) (six to one decision). But cf. *Northwest Optimation Servs., Inc.* v. *County of Hennepin,* 295 Minn. 570 (1973); *Tabulating Serv. Bureau, Inc.* v. *Commissioner of Taxation,* 295 Minn. 562 (1973). It may be poor policy not to assist the computer industry equally with industry which happens to qualify as engaged in manufacturing; indeed, the statute may be anachronistic; but these are matters beyond our province.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

[4] The *Franki Foundation* case takes the view that the installation of certain types of footings for buildings would commonly be called "construction" rather than manufacturing, and finds support in the original motive of the statute.