## THE ASSOCIATED PRESS *vs.* COMMISSIONER OF REVENUE.

No. 00-P-815.

Suffolk. February 12, 2002. - April 26, 2002.

Present: PORADA, LENK, & GREEN, JJ.

*Taxation,* Corporation. *Words,* "Manufacturing corporation."

The Appellate Tax Board did not err as a matter of law in its conclusion that a Massachusetts newspaper publisher (a "wire service") was not a "manufacturing corporation" within the meaning of G. L. c. 63, § 38C, based on its production in Massachusetts of digital files that were transmitted electronically to member news organizations. [603-606]

APPEAL from a decision of the Appellate Tax Board.

*Kathleen King Parker (James C. Heighman* with her) for the taxpayer.

*Elisabeth A. Ditomassi (Frances M. Donovan* with her) for Commissioner of Revenue.

GREEN, J. In 1996, a Massachusetts publisher successfully defended its designation as a "manufacturing corporation" under G. L. c. 63, § 38C, based on its production in Massachusetts of digital files to be used for book printing by independent contractors. See *Commissioner of Rev.* v. *Houghton Mifflin Co.,* 423 Mass. 42 (1996). Encouraged by that result, the plaintiff filed an application with the Department of Revenue seeking the same designation (and its accompanying favorable tax treatment). This appeal follows the denial of that application and an unsuccessful appeal to the Appellate Tax Board (board). We conclude that the plaintiff is not a "manufacturing corporation" within the meaning of the statute, and affirm the board's decision.

The essential facts are undisputed.[1] The plaintiff is a "wire

[1]The parties submitted an agreed statement of facts to the board.

service" formed as a cooperative in 1848 by a number of newspapers seeking to share the cost of gathering news. Since that time it has grown in size and scope, but its essential purpose remains. At present, its activities in Massachusetts include investigation, writing, and editing of news stories, and the preparation of associated photographs, for distribution to member news organizations. The plaintiff's reporters gather news and write stories about newsworthy events, and its editors edit the content prior to distribution. The edited version is transmitted electronically, in digital format, to member news organizations, which include both print and broadcast media. After editing, the recipient organizations incorporate selected news stories into their print publications or broadcast transmissions.

At issue is whether the plaintiff is a "manufacturing corporation" within the meaning of G. L. c. 63, § 38C, as amended through St. 1976, c. 415, § 32. The statute defines "manufacturing corporation" simply as a corporation "engaged in manufacturing." "The undefinable nature of the operative terms . . . necessitates case-by-case, analogical development of their meaning. Absent legislative instruction, we know of no better direction in which to proceed." *William F. Sullivan & Co.* v. *Commissioner of Rev.*, 413 Mass. 576, 581 (1992). Such instruction has been notably unforthcoming, particularly in what may loosely be termed the "information industry," despite repeated judicial invitation. See, e.g., *First Data Corp.* v. *State Tax Commn.*, 371 Mass. 444, 448 (1976); *Charles River Breeding Labs., Inc.* v. *State Tax Commn.*, 374 Mass. 333, 336 (1978); *Westinghouse Bdcst. Co.* v. *Commissioner of Rev.*, 382 Mass. 354, 360 (1981). The cases considering the term have sought to apply its "common meaning . . . , as assisted by a consideration of the historical origins of the enactment," *Commissioner of Rev.* v. *Houghton Mifflin Co.*, *supra* at 45, quoting from *Westinghouse Bdcst. Co.* v. *Commissioner of Rev.*, *supra* at 357, to the effect that "manufacture" is "change wrought through the application of forces directed by the human mind, which results in the transformation of some preexisting substance or element

into something different, with a new name, nature or use."
*Boston & Me. R.R.* v. *Billerica*, 262 Mass. 439, 444-445 (1928).[2]

Cases construing the term have also observed that "processes
which do not in themselves produce a finished product are
nonetheless 'manufacturing' if they comprise an 'essential and
integral part of a total manufacturing process.' " *Commissioner
of Rev.* v. *Houghton Mifflin Co.*, *supra* at 47, quoting from *William F. Sullivan & Co.* v. *Commissioner of Rev.*, *supra* at 580.
So, for example, the Supreme Judicial Court has held the following to constitute a change or refinement sufficient for
"manufacturing" recognition: scouring raw waste wool into
wool ready for conversion into cloth, rugs, or other finished
wool products, *Assessors of Boston* v. *Commissioner of Corps.
& Taxn.*, 323 Mass. 730, 749 (1949); milling raw timber into
finished lumber, *Joseph T. Rossi Corp.* v. *State Tax Commn.*,
369 Mass. 178, 182 (1975); and converting used metal parts
into compressed bales of scrap metal of various grades, *William F. Sullivan & Co.* v. *Commissioner of Rev.*, *supra* at 581.

In contrast, the crushing of quarried rocks into usable sizes
does not qualify as manufacturing, even where the crushed
stone is sorted into eleven gradations of size. See *Tilcon-Warren
Quarries, Inc.* v. *Commissioner of Rev.*, 392 Mass. 670, 672-
673 (1984). See also *Southeastern Sand & Gravel, Inc.* v. *Commissioner of Rev.*, 384 Mass. 794, 795-796 (1981). Of perhaps
closer comparison to the circumstances of the present case, the
mere "transmission or manipulation of knowledge or intelligence" does not constitute manufacturing, see *First Data
Corp.* v. *State Tax Commn.*, 371 Mass. at 447-448, nor does the
production and transmission of news and entertainment by
means of television or radio broadcast, see *Westinghouse Bdcst.
Co.* v. *Commissioner of Rev.*, *supra* at 357.

The plaintiff's essential argument is by analogy to *Houghton
Mifflin*. In *Houghton Mifflin*, the Supreme Judicial Court

---

[2]The historical origins of the manufacturing exemption, as described in
*Houghton Mifflin*, are found in depression-era concerns for the fate of Massachusetts mills and factories. *Commissioner of Rev.* v. *Houghton Mifflin Co.*,
*supra* at 46. Though *Boston & Me. R.R.* predated by two years the enactment
of § 38C, its formulation has been adopted by the cases decided under that
statute. See *Commissioner of Rev.* v. *Houghton Mifflin Co.*, *supra*, and cases
cited.

concluded that Houghton Mifflin was a "manufacturing corporation" based on its production of digital computer files and CD ROMs used for printing books by independent contractors. The plaintiff argues that its news stories and photographs are to the production of newspapers as the digital files produced by Houghton Mifflin are to the production of books.[3]

In *Houghton Mifflin,* the "manufactured" product consisted of "ideas, art, information, and photographs, [transformed] by application of human knowledge, intelligence, and skill, into computer disks, ready for use by independent printers, containing an immense amount of information in a highly organized form." *Commissioner of Rev. v. Houghton Mifflin Co., supra* at 48. The salient distinguishing characteristic of Houghton Mifflin's product is not its intellectual content, but the fact that it is "physically useful in making the finished product," viz. books. *Id.* at 49. As such, the court distinguished Houghton Mifflin's activities from "those of a furniture designer who produces designs to be used by others to build furniture, or an author who writes and sells a manuscript to a publisher." *Ibid.*

On the present record, we are not persuaded that the board erred as a matter of law in its conclusion that the plaintiff is not a "manufacturing corporation." Put another way, we cannot say that "a contrary conclusion is not merely a possible but a necessary inference from the findings." *First Data Corp.* v. *State Tax Commn., supra* at 446. Though the news stories prepared and distributed by the plaintiff represent some degree of refinement when compared to the information in its raw and ungathered state, the change is more of degree than of kind. We conclude that the news stories more closely resemble an author's manuscript prior to editing and incorporation in a published book than the finished layouts, ready for printing, produced by Houghton Mifflin. In particular, we note that the news stories distributed by the plaintiff are edited by the recipient member

---

[3]We assume, without deciding, that the production of newspapers qualifies as "manufacturing" within the meaning of the statute. The plaintiff refers to a list (not contained in the record) of excise tax classifications maintained by the Commissioner, in which a number of newspapers apparently enjoy manufacturing classification. We also note that the court in *Westinghouse* acknowledged without apparent disapproval the manufacturing classification of two newspapers. 382 Mass. at 359.

organizations, which also choose which stories to include in their finished publications or broadcasts, and where to include them. The plaintiff's essential character is more aptly captured by its self-description as a "wire service" than by its requested classification as a "manufacturing corporation."[4] To the extent that policy considerations or modern business realities suggest a new definition of "manufacture" more sympathetic to information vendors, or an exemption extending to businesses other than manufacturers, it is for the Legislature to say so.

*Decision of the Appellate Tax Board affirmed.*

---

[4]The plaintiff has directed our attention to an advisory opinion of the New York State Tax Commissioner, which concluded that the plaintiff's purchase of certain information services and equipment was exempt from New York sales and use tax. See N.Y. Tax Rep. (CCH) par. 403-132 (1998). The delphic nature of the New York opinion does not reveal the analysis on which it rests, though it does not appear to involve any determination that the plaintiff's activities constitute "manufacturing." In any event, "[d]ecisions of other jurisdictions are not likely to have direct bearing because of the peculiarities of the various taxing schemes." *Commissioner of Rev.* v. *Houghton Mifflin Co., supra* at 50, quoting from *Westinghouse Bdcst. Co.* v. *Commissioner of Rev., supra* at 358.