In the Matter of the Liquidation of American Mutual Liability Insurance Company.

IN THE MATTER OF THE LIQUIDATION OF AMERICAN MUTUAL LIABILITY INSURANCE COMPANY & another.[1]

Suffolk. December 4, 2003. - February 2, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Receiver. Insurance,* Insolvency of insurer, Notice. *Insurance Company,* Insolvency. *Notice. Statute,* Construction. *Words,* "Policyholders," "Creditor."

Discussion of the statutory framework for insurer receivership and liquidation set forth in the Insurance Liquidation Act, G. L. c. 175, §§ 180A-180L. [799-800]

This court concluded, based on relevant legislative history, purpose, and the practical effect of the requirements of the statute, that the class of "policyholders" to be mailed written notice of the appointment of a receiver for their insurance company under G. L. c. 175, § 180D, included only those persons with in-force policies at the time of the appointment, and not those persons issued "occurrence" policies that were no longer in force at the time of the receiver's appointment [800-804], and that extension of the deadline in which to file a claim against the insurance company in liquidation was inconsistent with the purposes of § 180D and not an appropriate remedy for a receiver's failure to give proper notice under that statute [804-806].

This court concluded that the class of "known creditors" required to be given notice of an application to liquidate an insurance company pursuant to G. L. c. 175, § 180C, did not include a policyholder that had not filed a claim against the insurer under its policy. [806-807]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 17, 1989.

Questions of law were reported by *Cowin,* J.

*Eric A. Smith,* Special Assistant Attorney General, for Commissioner of Insurance.

*Andrew M. Reidy* for Ligget Group Inc.

CORDY, J. In this case, we are required to construe the scope of certain notice requirements under the Insurance Liquidation Act, G. L. c. 175, §§ 180A-180L, in response to three questions reserved and reported by a single justice of this court.

---

[1]American Mutual Insurance Company of Boston.

1. *Procedural history.* American Mutual Liability Insurance Company (AMLICO) and American Mutual Insurance Company of Boston are in the process of liquidating pursuant to G. L. c. 175, § 180C. Under the third amended plan of liquidation, approved by the single justice, the Commissioner of Insurance, as permanent receiver, must determine whether claims recently filed against AMLICO are timely, in light of the plan's March 9, 1990, claim filing deadline.

On January 21, 2000, Liggett Group Inc. (Liggett) submitted a claim for alleged losses relating to liability for injuries stemming from its manufacture of tobacco products. The receiver determined that the claim was untimely. Liggett requested reconsideration, and that reconsideration was denied. Pursuant to the liquidation plan, the receiver reported his determination that the claim was untimely to a special master.

Before the special master, Liggett argued that its status in the liquidation was either that of an AMLICO "policyholder" or of a "known creditor" (or both) and therefore it was entitled to receive notice addressed specifically to it of the appointment of the receiver or notice of the receiver's application for liquidation, both of which had occurred in 1989. Because it received neither notice, Liggett contended that its claim, filed ten years after the claim filing deadline, should not be barred. After a hearing, the special master concluded that Liggett qualified as a "policyholder" under G. L. c. 175, § 180D, and therefore should have been sent notice of the receiver's appointment, but was not a "known creditor" entitled to notice of the receiver's application for liquidation under § 180C, unless it could show that it had made a claim against AMLICO under its policy. After a further hearing, the special master determined that the remedy for the receiver's failure to give notice of his appointment under § 180D was to treat Liggett's January 21, 2000, claim as timely.[2]

The receiver filed an objection to the decision of the special master with the single justice, who reserved and reported the following questions:

[2]Specifically, the special master concluded that "[t]he remedy, absen[t] possible estoppel or laches, is to treat the late filed claim as timely." In a subsequent letter to the special master, the receiver waived any laches defense.

"a. Are the 'policyholders' to be mailed written notice of the appointment of a receiver pursuant to G. L. c. 175, § 180D, the persons with in-force policies at the time of the appointment or those persons and other persons issued 'occurrence' policies in the past?

"b. Is the remedy for the failure of the Receiver to comply with the notice requirement set forth in G. L. c. 175, § 180D to deem Liggett's claim timely subject to consideration of a laches defense?

"c. For a 'policyholder' to qualify as a 'known creditor' to be given notice of an application to liquidate an insurer pursuant to G. L. c. 175, § 180C, must it have made a claim against the insurer under its policy?"

2. *Background.* Liggett, a manufacturer of tobacco products, purchased liability insurance policies from AMLICO from 1911 through 1979 but not thereafter. Like most insurance policies issued during that lengthy time period, Liggett's policies were "occurrence policies," meaning that they provided coverage for events taking place during the term of the policy, regardless of the date the claim was filed.[3]

In the 1980's, AMLICO incurred substantial financial losses, ultimately resulting in the appointment of the Commissioner as temporary receiver on January 17, 1989. The temporary receiver mailed notice of his appointment to all "in-force policyholders";[4] no such notice was mailed to Liggett.

The temporary receiver then filed a petition with the single justice to liquidate AMLICO on the ground of insolvency. On

---

[3] "Coverage is effective in an occurrence policy if the covered act or covered omission occurs within the policy period, regardless of the date of discovery. A claims-made policy covers the insured for claims made during the policy year and reported within that period or a specified period thereafter regardless of when the covered act or omission occurred." *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. 862, 863-864 (1990). Accord 1 G. Couch, Insurance § 1:5 (3d ed. 1995 & Supp. 2003) (contrasting claims-made and occurrence policies).

[4] The parties and the special master appear to agree that "in-force policyholders" are current holders of policies whose covered time periods have not expired, as distinguished from holders of policies (such as Liggett) whose covered time periods have expired, but who still may assert claims for "acts or omissions" that occurred during those periods; we adopt this definition for the purposes of this opinion.

February 16, 1989, the court issued an order of notice on the petition for an order of liquidation and for appointment of permanent receiver. This notice was mailed to approximately 230,000 persons, including those identified by the receiver as "known creditors," as well as in-force policyholders and all persons who purchased policies in the preceding five years. The notice was also published in the national edition of The Wall Street Journal and sixteen other newspapers. Liggett was not mailed a copy of the notice. On March 9, 1989, a single justice entered an order of liquidation, appointment of permanent receiver, and permanent injunction under which the receiver was required to cancel all in-force policies. Notice of the appointment of the commissioner as permanent receiver and the cancellation of policies was sent to all in-force policyholders, i.e., the holders of policies that were to be cancelled. Again, Liggett was not included in this group.

Finally, on March 22, 1989, the single justice entered an order establishing March 9, 1990, as the claim filing deadline. Copies of the court-approved claim form, which included the filing deadline, were sent to over 230,000 persons identified by the receiver as "potential creditors," including in-force policyholders and those who had purchased policies during the previous eight years.[5,6] Sometime later, notice of the claim filing deadline was published in newspapers in the capital cities of all fifty States, the District of Columbia, Puerto Rico, and Canada.

3. *Discussion.* We begin with a brief description of the statutory framework for insurer receivership and liquidation, G. L. c. 175, §§ 180A-180L. When a domestic insurance company encounters difficulties, including financial difficulties, the Commissioner may institute a "rehabilitation proceeding" and apply to this court for his or her "appointment as receiver to rehabilitate such company and conserve its assets." G. L. c. 175, § 180B. Notice of the appointment of a receiver is to be given

---

[5]Although AMLICO retained archived information on policies dating back as far as 1911, the names and addresses on its computer system went back only as far as 1981.

[6]It cannot be ascertained from the record whether this group of 230,000 notice recipients is the same as the group that received notice of the petition to liquidate, although it appears to be essentially the same.

to all "policyholders" pursuant to § 180D. After appointment, the receiver takes possession of the company assets, and may either proceed to rehabilitate the insurer and apply to return those assets to the control of the company to resume its business, see § 180B, or determine that the insurer is insolvent and make application for its liquidation under § 180C. If the receiver seeks to liquidate the insurer, notice of the application to liquidate must be given to all "known creditors" prior to a court hearing on the matter. *Id.*

If the court approves the liquidation, it will provide for the filing of proofs of claim in liquidation, see G. L. c. 175, §§ 180F-180H, and establish a claim filing deadline. While there is no statutory provision for notice of the claim filing deadline, the court has historically ordered that such notice be given to potential claimants. See *Commissioner of Ins.* v. *Bristol Mut. Liab. Ins. Co.*, 279 Mass. 325, 327 (1932).

a. *Scope of "policyholders" in § 180D.* Section 180D provides:

> "The receiver of any company . . . appointed under [§ 6], [§ 180B] or [§ 180C], shall, within twenty days after his appointment, give notice thereof to all policyholders of the company by written notice, in a form prescribed by the court, sent by mail, postage prepaid, to the last address of the insured appearing on the records of the company."

The first reported question requires us to determine whether "policyholders" as used in this section encompasses owners of "occurrence" policies whose policies are no longer in force at the time of the receiver's appointment.[7] We hold that it does not.

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). "[T]he primary source of insight into the intent of the

---

[7] See note 4, *supra.*

Legislature is the language of the statute." *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983). Where, as here, a statutory term is undefined, "the Legislature should be supposed to have adopted the common meaning of the word, as assisted by a consideration of the historical origins of the enactment." *First Data Corp.* v. *State Tax Comm'n*, 371 Mass. 444, 447 (1976).[8]

Normally, a dictionary definition of a term is strong evidence of its common meaning; however, "policyholder" is a term for which dictionaries offer differing definitions. At least one dictionary describes a "policyholder" as one who has been "granted an insurance policy," suggesting that parties who have purchased occurrence policies in the past remain "policyholders" even after the period of coverage has ended. Webster's Third New Int'l Dictionary 1754 (1993). By contrast, other sources define a policyholder as one who "pays a premium" on or is "responsible for" a policy, suggesting that when the *insured's* obligations on the policy cease, that party is no longer a policyholder. See Encarta World English Dictionary (2003) (defining "policyholder" as "insured person: a named person or organization responsible for an insurance policy"); Dictionary of Insurance Terms (1998) (defining "policyholder" as "[a] person who pays a premium to an insurance company in exchange for the insurance protection provided by a policy of insurance"). Most commonly, however, dictionary definitions of "policyholder" are ambiguous, neither supporting nor refuting the claim that "policyholder" is limited to owners of in-force policies.[9]

Because the statutory language "does not provide a definite

[8] The Legislature has provided a definition of "policyholder" in an unrelated chapter of the insurance laws, G. L. c. 175I, dealing with privacy protection afforded to insurance information. In that chapter, a "[p]olicyholder" is defined, in relevant part, as "any person who . . . is a present policyholder." G. L. c. 175I, § 2.

[9] See Glossary of Insurance and Risk Management Terms 145 (8th ed. 2001) ("Person in actual possession of insurance policy"); Dictionary of Insurance Terms 385 (4th ed. 2000) ("individual or other entity who owns an insurance policy"); Black's Law Dictionary 1178 (7th ed. 1999) ("One who owns an insurance policy . . ."); Webster's II Dictionary 910 (1984) ("One that holds an insurance contract or policy"); American Heritage Dictionary 1014 (1981) (same).

802                                        440 Mass. 796 (2004)

In the Matter of the Liquidation of American Mutual Liability Insurance Company.

answer to the question, it is appropriate to consult other sources to obtain a resolution," *Boylston* v. *Commissioner of Revenue*, 434 Mass. 398, 401 (2001), including the relevant legislative history, insofar as it sheds light on the Legislature's purpose in enacting the section. See *Wong* v. *University of Mass.*, 438 Mass. 29, 30 (2002). Section 180D was enacted in 1939, St. 1939, c. 472, § 3, as part of legislation based on the Uniform Insurers Liquidation Act (1939) (UILA). See *Commissioner of Ins.* v. *Equity Gen. Ins. Co.*, 346 Mass. 233, 236 (1963). The notice requirement in § 180D, however, was not part of the UILA; rather, it was a reenactment of an essentially identical provision, former § 180A, that predated the UILA.[10] The Legislature originally enacted this section in 1924 on the recommendation of the Commissioner, who explained the reason for his recommendation in the following terms:

> "A large number of cases have come to the attention of the Department in connection with these receiverships in which the insured had no actual knowledge that his policy had been terminated by the appointment of a receiver until long after the appointment and in several cases the insured sustained a fire loss after the receiver's appointment of which he had no knowledge."

1924 House Doc. No. 160, at 1-2. This explanation illuminates the genesis of the notice requirement, and supports the proposition that its purpose is to prevent parties from sustaining uninsured loss by giving them actual notice of the appointment of a receiver, thereby allowing them to secure an alternative source of insurance for future occurrences at the earliest pos-

---

[10]Former G. L. c. 175, § 180A, inserted by St. 1924, c. 49, provided:

"The receiver of any domestic company shall, within twenty days after his appointment, give notice thereof to all policy holders of the company by written notice, in a form prescribed by the commissioner, sent by mail, postage prepaid, to the last address of the insured appearing on the records of the company, to the address or location given in the policy, or to the last business residence or other address known to the receiver, and also shall within said period cause notice thereof to be published in such form and in such newspapers published in the commonwealth as the commissioner may direct."

sible moment. The fulfilment of this purpose does not require that the term "policyholders" include purchasers of occurrence policies whose policy periods have expired. In contrast to current holders of in-force policies, former purchasers are not, at the time of the commencement of a receivership proceeding, covered for *future* occurrences; consequently, notice of the appointment of a receiver would not prevent those parties from sustaining future uninsured loss.[11]

In addition, the Legislature could not have intended receivers to shoulder the unreasonable burden of providing § 180D notice to all former purchasers of occurrence policies. The Legislature is presumed to understand all of the consequences of its actions, *Boston Water & Sewer Comm'n* v. *Metropolitan Dist. Comm'n*, 408 Mass. 572, 578 (1990), and "is presumed to have acted rationally and reasonably," *Sturgis* v. *Attorney Gen.*, 358 Mass. 37, 40 (1970), quoting *Commonwealth* v. *Leis*, 355 Mass. 189, 192 (1969). Section 180D requires that the receiver mail notice to "the last address of the insured appearing on the records of the company." In this case, AMLICO had address records relating to policies issued as far back as 1911, only the most recent years of which were accessible within AMLICO's existing computer system. If Liggett's reading of § 180D were adopted, the receiver would have had twenty days to locate and mail notice to all of the addresses contained in seventy-eight years of archived records.[12] This burden, which would accrue in any receivership involving an insurer that had been in business over an extended period of time, is unreasonable and could not have been intended by the Legislature.

---

[11]Although owners of occurrence policies whose coverage periods have expired might seek to replace coverage by buying claims-made policies covering claims arising out of occurrences during the expired occurrence periods, this kind of replacement is plainly not what the Legislature sought to facilitate by enacting § 180D. The commissioner's statement speaks in terms of loss sustained after the receiver's appointment; it did not appear to contemplate claims filed after the appointment for losses sustained well before. Moreover, it is unlikely that the Legislature, either in 1924 when it initially enacted former § 180A, or in 1939 when it recodified it as § 180D, would have looked beyond the predominate traditional "occurrence" model to anticipate the subsequent development of claims-made coverage. Cf. Insurance Industry Is Changing Policy for Basic Business Liability Coverage, Wall St. J., Jan. 5, 1984 (describing rise of claims-made policy structure in early 1980's).

[12]Some, if not most, of the older addresses would have been hopelessly out of date, so mailing written notice would have benefited no one.

Liggett nevertheless contends that the notice provision "serves a very 'practical purpose,' as it permits [purchasers of occurrence policies whose covered periods have expired] to take steps to protect their contractual rights." While ensuring that parties are on notice to protect their contract rights may be a laudable goal, it is not the purpose behind § 180D. If notice of the appointment of a receiver to all parties to which the insurer owed contractual rights were the goal of § 180D, the statute would be grossly underinclusive: it provides notice only for policyholders, excluding other parties — including other creditors — who might also wish to take steps to better protect their contractual rights were they given notice. Moreover, the appointment of a receiver by itself — the event that triggers § 180D notice — has no effect on parties' contractual rights. Section 180D notice is required regardless of whether the insurer might ultimately undergo rehabilitation pursuant to § 180B or liquidation under § 180C. The events of legal significance to a party with contractual rights are the actual liquidation of the insurer and the claim filing deadline. Notice of these events are provided for under other provisions of law: § 180C requires notice be given to "known creditors" of a receiver's application to liquidate before it is approved, and the single justice will order that notice of a claim filing deadline be broadly provided to potential claimants, consistent with the principles of due process. See *Tulsa Professional Collection Servs., Inc.* v. *Pope*, 485 U.S. 478, 489-490 (1988). In sum, § 180D is neither sufficient to serve the purpose of notifying parties interested in protecting their contractual rights, nor necessary to further that purpose in light of other statutory and due process notice requirements.

Although the text of § 180D leaves the term "policyholders" ambiguous, consistent with the legislative history, purpose, and the practical effect of the requirement set forth in that section, we construe the term to be limited to parties with in-force policies at the time of the appointment of a receiver.

b. *Remedy under § 180D.* We next address whether the remedy for a receiver's failure to give proper notice under § 180D is to permit the filing of a claim after the claim filing

440 Mass. 796 (2004) 805

In the Matter of the Liquidation of American Mutual Liability Insurance Company.

deadline.[13] Section 180D makes no express provision for a remedy: it merely states that the receiver "shall" give notice of his appointment. Where the language of a statute provides no express remedy, we consider the propriety of a proposed remedy in light of the purposes of the statute. See *LeClair* v. *Norwell*, 430 Mass. 328, 337-339 (1999). As we have discussed, the primary purpose of § 180D is to prevent insured parties from sustaining future uninsured loss by allowing them to secure an alternative source of insurance. Plainly, the extension of the claim filing deadline for losses that have already occurred is unrelated to this purpose. Moreover, the underlying event for which § 180D notice is provided has nothing to do with the filing of claims or the claim filing deadline. At the time a receiver is appointed the need for a liquidation and a claims filing period will be undetermined, and if they become necessary, other notice provisions apply. Consequently, the extension of the claim filing deadline ordered by the special master in this case is not consistent with the purposes of § 180D.

Additionally, permitting the extension of the claim filing deadline when a receiver fails to give adequate § 180D notice would undermine one of the chief purposes of the Insurance Liquidation Act — namely, to ensure the prompt, fair, and orderly processing of claims against insolvent insurers. The Legislature's interest in expeditious receivership and liquidation proceedings is evident from the structure of the Act. See, e.g., G. L. c. 175, § 180C (requiring receiver to submit proposal for asset distribution *120 days* after determination of insolvency); G. L. c. 175, § 180D (requiring notice of appointment of receiver within *twenty days*). The use of a claim filing deadline serves this purpose of expediting and finalizing proceedings. See *Tulsa Professional Collection Servs., Inc.* v. *Pope, supra* at 479-480 ("[g]iving creditors a limited time in which to file

---

[13]Our answer to the first reported question may technically render this issue moot. However, "[w]e make an exception to the general rule against hearing moot claims in some cases 'because of the public interest involved and the uncertainty and confusion that exist.' " *Dimino* v. *Secretary of the Commonwealth*, 427 Mass. 704, 708 (1998), quoting *Metros* v. *Secretary of the Commonwealth*, 396 Mass. 156, 159 (1985). We are most willing to make this exception where, as here, the parties have fully briefed and argued the issue. See, e.g., *Delaney* v. *Commonwealth*, 415 Mass. 490, 492 (1993).

claims against the estate serves the State's interest in facilitating the administration and expeditious closing of estates"). The extension of the claim filing deadline would only be an appropriate remedy where the specific failure bears directly on the fairness of the liquidation or the claim filing process. A violation of the § 180D notice requirement does not rise to that level.[14]

c. *Scope of "known creditors" in § 180C.* Finally, we turn to the third reported question and address whether the holder of an insurance policy is a "known creditor" for purposes of § 180C, if the policyholder has not filed a claim under its policy.

We again begin with the text of the statute, § 180C, seeking to determine first the intended meaning of the term "creditor." See *First Data Corp.* v. *State Tax Comm'n*, 371 Mass. 444, 447 (1976). " '[W]e are constrained to follow' the plain language of a statute when its 'language is plain and unambiguous,' and its application would not lead to an 'absurd result,' or contravene the Legislature's clear intent." *Commissioner of Revenue* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999), quoting *White* v. *Boston*, 428 Mass. 250, 253 (1998).

In relevant part, § 180C provides:

> "The court, after notice to all *known creditors* and stockholders of the company and a full hearing, may order [the insurer's] liquidation and appoint the commissioner as permanent receiver thereof. . . .

> "The rights and liabilities of the company and *of its creditors*, except those holding contingent claims, *and of its policyholders*, stockholders or members, and of all other persons interested in its assets, shall, unless otherwise ordered by the court, be fixed as of the date of the decree ordering liquidation."[15] (Emphases added.)

A creditor is "[o]ne to whom a debt is owed." Black's Law

---

[14]We are not called on to address what remedy, if any, *is* available to parties entitled to notice under § 180D who do not receive that notice. We merely hold that extension of an otherwise valid claim filing deadline *is not* a proper remedy under that section.

[15]The Legislature's use of the term "creditor," and its juxtaposition with the term "policyholder" in the statute, strongly suggests that it did not intend the status of mere "policyholder" to be the equivalent of "creditor." If all

Dictionary 375 (7th ed. 1999). While the relationship between insurer and policyholder is contractual, policies almost universally require an insured to give notice to an insurer (typically by filing a claim) before the insurer owes anything to the policyholder under the policy. See *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. 862, 864 (1990). Accord 13 G. Couch, Insurance § 186:1, at 186-8 (3d ed. 2000). Thus, the contractual relationship between a policyholder and an insurer is not converted to one of creditor and debtor until at least that step is taken. Because this principle holds for almost all insurance policies, and because requiring a receiver to search the text of each policy for exceptions would undermine the Legislature's clear preference in favor of expedient and final resolution of liquidation proceedings, see *infra*, we hold that a policyholder does not become a "creditor" for the purpose of § 180C notice until that policyholder files a claim with the insurer. As the special master concluded:

> "Logically, to change the relationship from 'policyholder' to 'known creditor,' the policyholder had to change position vis-à-vis the insurance company and to advance to a 'known creditor' status, there is no other way except by making a claim to the company for protection against a third-party claim. In this fashion, the policyholder becomes a 'creditor' who is 'known' to the insurance company."

We agree.[16]

4. *Conclusion.* We answer the first reported question by holding that the "policyholders" to be mailed written notice of the appointment of a receiver pursuant to G. L. c. 175, § 180D, are persons with in-force policies at the time of the appointment. We answer the second question in the negative, and we answer

---

"policyholders" were "creditors," there would have been no need to list them as a separate category of interested persons in a liquidation.

[16]For the same reasons, we reject Liggett's theory that an insurer's awareness from any source that a claim will likely be made in the future transforms the insured into a "known creditor." Identification of the "known creditors" to whom notice must be given cannot depend on subjective predictions of the insurer's employees, but rather on the insurer's records of claims actually made.

the third question in the affirmative. The case is remanded to the single justice for further proceedings consistent with this opinion.

*So ordered.*