COMMISSIONER OF REVENUE *vs.* HOUGHTON MIFFLIN
COMPANY.

Suffolk. November 9, 1995. - June 24, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Taxation,* Appellate Tax Board: formal procedure, Manufacturing corpora-
tion, Abatement, Investment tax credit. *Words,* "Manufacturing."

Discussion of the term "manufacturing corporation," appearing in G. L.
c. 63, § 38C, as it has been construed in Massachusetts cases. [44-48]
The Appellate Tax Board correctly concluded that a book publisher was
eligible for an investment tax credit, pursuant to G. L. c. 63, § 31A, as
a "manufacturing corporation," as that term is used in G. L. c. 63,
§ 38C, where the publisher's activities with respect to manuscripts that
result in printer-ready computer disks constitute a substantial and inte-
gral step in the process of manufacturing books. [48-51]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for
direct appellate review.

*Thomas A. Barnico,* Assistant Attorney General, for the
Commissioner of Revenue.

*Harold Hestnes* (*Michael J. Nathanson* with him) for the
defendant.

LIACOS, C.J. The Commissioner of Revenue (commissioner)
has appealed from a decision of the Appellate Tax Board
(board), given under the formal procedure, granting Hough-
ton Mifflin Company (Houghton) an abatement equal to
Houghton's 1988 investment tax credit. See G. L. c. 63,
§ 31A (1994 ed.). We allowed the commissioner's application
for direct appellate review.

The board concluded that Houghton was eligible for the
credit because it was a "manufacturing corporation" as that
term is used in G. L. c. 63, § 38C (1994 ed.). Such classifica-
tion allows a corporation to take advantage of an investment

tax credit, see G. L. c. 63, § 31A (*a*),[1] and certain exemptions from local taxes on machinery. See G. L. c. 59, § 5, Sixteenth (3) (1994 ed.). Decisions of the board are final as to findings of fact. G. L. c. 58A, § 13 (1994 ed.). Thus, the sole question before us is whether the board erred as a matter of law. See *First Data Corp.* v. *State Tax Comm'n*, 371 Mass. 444, 446 (1976). "[O]therwise stated, the question is whether a contrary conclusion is not merely a possible but a necessary inference from the findings." *Id.* We conclude that the board did not err. We affirm the board's decision.[2]

The essential facts are not in dispute. We recite these facts as found by the board in its decision. Houghton is a Massachusetts corporation and a well-known publisher of elementary, secondary, and college textbooks, as well as trade, reference, fiction, and nonfiction books. Its book-production process was described by the board as follows: "Initially, editors, ordinarily employed by [Houghton], engage in extensive research and development activities regarding a proposed book. These activities include researching the probable marketability and developing the content and format of a proposed book. [Houghton's] employees then design, write, and produce a manuscript to serve as the content of a proposed book. Various writers and editors working on different portions and aspects of a proposed book combine their work on a network.

"Next, [Houghton's] employees produce and then circulate among the company's marketing, production, and editing personnel thumbnail sketches for further processing and refinement. After that step, electronic-production specialists transform the manuscript and thumbnail sketches into templates which are analogous to blueprints or page outlines without any text. [Houghton's] art department then creates drawings, develops charts and graphs, and creates line art for inclusion in the ultimate product. The art department also

---

[1]General Laws c. 63, § 31A (*a*) (1994 ed.), allows a manufacturing corporation to take a credit against its corporate excise due equal to "one percent of the cost or other basis for Federal income tax purposes of qualifying tangible property acquired, constructed, reconstructed, or erected during the taxable year . . . including buildings and structural components of buildings acquired by purchase, as defined under [26 U.S.C. § 179(d)]."

[2]We acknowledge the assistance to the court of the amicus brief of the Associated Industries of Massachusetts.

selects, retrieves, and transforms photographs for incorporation into the ultimate product.

"Following these steps, all of the aforementioned items are assembled into layouts. First proofs are subsequently produced and marked for changes and corrections, resulting in the production of second proofs which further refine the product. The second proofs are then converted into color proofs. Throughout this process, [Houghton] uses, among other things, human skill and knowledge as well as various implements, materials, and machines or machinery such as computers, digital modems, printers, photocopiers, writing utensils, lighting machines, drawing equipment and materials, graphic art tools, electronic graphic equipment, electronic color collection equipment, photo-retrieval equipment, sophisticated software, and scanners.

"From the color proof stage of the process, [Houghton] either produces CD ROM tapes which are then sent to independent contractors for final packaging in compact disks, or it sends the proofs (usually on computer diskettes) to independent contractors for printing and binding into conventional books."

A "manufacturing corporation" is defined by G. L. c. 63, § 38C, as a corporation "engaged in manufacturing." This "less than illuminating" definition, *William F. Sullivan & Co.* v. *Commissioner of Revenue*, 413 Mass. 576, 579 (1992), combined with the desirability of the classification,[3] has spawned a great body of caselaw,[4] in which we have concluded that "[t]he words 'engaged in manufacturing' as

[3]In addition to eligibility for the investment tax credit, classification as a manufacturing corporation under G. L. c. 63, § 38C, also exempts the corporation from local property tax under G. L. c. 59, § 5, Sixteenth (3) (1994 ed.). See, e.g., *York Steak House Sys., Inc.* v. *Commissioner of Revenue*, 393 Mass. 424, 424-425 (1984); Letter Ruling 90-5 (Nov. 3, 1990), 3 Official MassTax Guide at 594-596 (West 1995). Liability for local tax is not at issue in this case.

[4]See *William F. Sullivan & Co.* v. *Commissioner of Revenue*, 413 Mass. 576 (1992) (scrap metal processor is manufacturer); *York Steak House Sys., Inc.* v. *Commissioner of Revenue*, *supra* (converting frozen steak to cooked steak is not manufacturing); *Tilcon-Warren Quarries, Inc.* v. *Commissioner of Revenue*, 392 Mass. 670 (1984) (stone crushing is not manufacturing); *Southeastern Sand & Gravel, Inc.* v. *Commissioner of Revenue*, 384 Mass. 794 (1981) (same); *Westinghouse Broadcasting Co.* v. *Commissioner of Revenue*, 382 Mass. 354, appeal dismissed, 452 U.S. 933 (1981) (television and radio broadcasting is not manufacturing); *Charles River Breeding Lab., Inc.*

used in [G. L. c. 63, § 38C,] . . . are words of flexible meaning." *Commissioner of Corps. & Taxation* v. *Assessors of Boston*, 324 Mass. 32, 36 (1949) (*Assessors of Boston II*). Accord *William F. Sullivan & Co.* v. *Commissioner of Revenue, supra* at 578-579; *Tilcon-Warren Quarries, Inc.* v. *Commissioner of Revenue*, 392 Mass. 670, 672 (1984); *Southeastern Sand & Gravel, Inc.* v. *Commissioner of Revenue*, 384 Mass. 794, 795 (1981); *Joseph T. Rossi Corp.* v. *State Tax Comm'n*, 369 Mass. 178, 181 (1975). "The undefinable nature of the operative terms . . . necessitates case-by-case, analogical development of their meaning. Absent legislative instruction, we know of no better direction in which to proceed." *William F. Sullivan & Co.* v. *Commissioner of Revenue, supra* at 581.

Our lodestar in these cases has been the rule that, where a dominant statutory term is undefined, "the Legislature should be supposed to have adopted the common meaning of the word, as assisted by a consideration of the historical origins of the enactment." *Westinghouse Broadcasting Co.* v. *Commissioner of Revenue*, 382 Mass. 354, 357, appeal dismissed, 452 U.S. 933 (1981), quoting *First Data Corp.* v. *State Tax*

v. *State Tax Comm'n*, 374 Mass. 333 (1978) (raising partially uncontaminated laboratory animals is not manufacturing); *Hopkinton LNG Corp.* v. *State Tax Comm'n*, 372 Mass. 286 (1977) (liquefaction and vaporization of natural gas is not manufacturing); *First Data Corp.* v. *State Tax Comm'n*, 371 Mass. 444 (1976) (data processing corporation is not manufacturer); *Fernandes Super Mkts., Inc.* v. *State Tax Comm'n*, 371 Mass. 318 (1976) (grocery store chain whose own baked goods account for 7.5 per cent of total gross profits is not manufacturer); *Joseph T. Rossi Corp.* v. *State Tax Comm'n*, 369 Mass. 178 (1975) (converting standing timber into cut lumber is manufacturing); *Franki Found. Co.* v. *State Tax Comm'n*, 361 Mass. 614 (1972) (making "pressure injected footings" is not manufacturing); *Commissioner of Corps. & Taxation* v. *Assessors of Boston*, 324 Mass. 32 (1949) (converting mahogany logs into veneer and producing tea bags are both manufacturing); *Assessors of Boston* v. *Commissioner of Corps. & Taxation*, 323 Mass. 730 (1949) (roasting and grinding coffee, producing soft drinks and juice, producing chocolate milk and ice cream mix, scouring wool, cutting and setting glass in frames, producing candy packaging, and book and magazine binding all constitute manufacturing); *Assessors of Springfield* v. *Commissioner of Corps. & Taxation*, 321 Mass. 186 (1947) (telephonic transmission of sound is not manufacturing); *Commissioner of Corps. & Taxation* v. *Assessors of Boston*, 321 Mass. 90 (1947) (commercial baking, producing jams and jellies, making sausages, curing and smoking bacon and ham, and printing books are all manufacturing; laundering soiled clothes is not manufacturing); *Boston & Me. R.R.* v. *Billerica*, 262 Mass. 439 (1928) ("machinery used in the generation of electricity . . . constituted employment in a branch of manufacture").

*Comm'n,* 371 Mass. 444, 447 (1976). Accord *William F. Sullivan & Co.* v. *Commissioner of Revenue, supra* at 579; *Charles River Breeding Lab., Inc.* v. *State Tax Comm'n,* 374 Mass. 333, 335-336 (1978); *Franki Found. Co.* v. *State Tax Comm'n,* 361 Mass. 614, 617-618 (1972). As to the term's common meaning, "our decisions have embraced the basic concept of manufacturing articulated in *Boston & Me. R.R.* v. *Billerica,* 262 Mass. 439, 444-445 (1928): '[C]hange wrought through the application of forces directed by the human mind, which results in the transformation of some preexisting substance or element into something different, with a new name, nature or use.' " *William F. Sullivan & Co.* v. *Commissioner of Revenue, supra.* Accord *Tilcon-Warren Quarries, Inc.* v. *Commissioner of Revenue, supra* (quoting same language); *Joseph T. Rossi Corp.* v. *State Tax Comm'n, supra* at 180 (quoting same language).

General Laws c. 63, § 38C, first appeared in § 5 of St. 1930, c. 220. It was subsequently incorporated in St. 1936, c. 362, § 1, and it is to the 1936 act that we have looked for guidance regarding legislative intent. See, e.g., *Fernandes Super Mkts., Inc.* v. *State Tax Comm'n,* 371 Mass. 318, 321 (1976); *Franki Found. Co.* v. *State Tax Comm'n, supra*; *Commissioner of Corps. & Taxation* v. *Assessors of Boston,* 321 Mass. 90, 95-96 & n.1 (1947) (*Assessors of Boston I*). It was enacted pursuant to 1936 House Doc. No. 143, entitled "Report of the Special Commission Relative to Taxation of Tangible and Intangible Property and Certain Related Matters." *Franki Found. Co.* v. *State Tax Comm'n, supra.* The commission reported, in part, as follows: "Long regarded as a great industrial State, in which prosperous cities and thriving towns found their inhabitants busily employed in mills and factories, few there were who ever conceived the possibility of such a decline in industrial manufacturing as has occurred. . . . Idle factories and abandoned mills are the silent and convincing evidence of the disaster that has come upon our people. We do not attempt to give all the reasons for the loss of this industry, but it is clear that among the many causes high taxes play an important part. . . . It is imperative, therefore, that the State shall provide sufficient relief to save the factories and mills now operating from closing their doors and seeking locations in other States. . . . The effect of such [tax relief] undoubtedly will be to retain within the State

the factories now operating, the possible reopening of factories now closed, and the attracting of new industries to locations within our borders." *Id.* at 618 n.1, quoting 1936 House Doc. No. 143 at 5-6.

Although "[t]he statutory goal was not to encourage and preserve all industry in the Commonwealth but only that portion of industry represented by manufacturing corporations," *Charles River Breeding Lab., Inc.* v. *State Tax Comm'n, supra* at 336, we have nevertheless stressed that the words "engaged in manufacturing" are not to be given a narrow or restricted meaning" and that "the statute should be construed, if reasonably possible, to effectuate th[e] legislative intent [of fostering industrial expansion]." *Joseph T. Rossi Corp.* v. *State Tax Comm'n, supra* at 181, quoting *Assessors of Boston* v. *Commissioner of Corps. & Taxation*, 323 Mass. 730, 741 (1949). Accord *William F. Sullivan & Co.* v. *Commissioner of Revenue*, 413 Mass. 576, 579 (1992); *Assessors of Boston II, supra*; *Assessors of Boston I, supra* at 97.

Our past cases in this area have focused on whether the processes under study "effect[ed] the kind of change and cause[d] a correlative degree of refinement to the source material" sufficient to qualify as "manufacturing." *William F. Sullivan & Co.* v. *Commissioner of Revenue, supra* at 581. Accord *York Steak House Sys., Inc.* v. *Commissioner of Revenue*, 393 Mass. 424, 426 (1984); *Hopkinton LNG Corp.* v. *State Tax Comm'n*, 372 Mass. 286, 287-288 (1977). Although the activity at issue must constitute more than merely providing raw materials to another to be processed, see *Tilcon-Warren Quarries, Inc.* v. *Commissioner of Revenue, supra* at 674, processes which do not in themselves produce a finished product are nonetheless "manufacturing" if they comprise an "essential and integral part of a total manufacturing process." *William F. Sullivan & Co.* v. *Commissioner of Revenue, supra* at 580, quoting *Joseph T. Rossi Corp.* v. *State Tax Comm'n, supra* at 181-182.[5]

In *William F. Sullivan & Co.* v. *Commissioner of Revenue*,

---

[5]Of similar import is the commissioner's regulation, 830 Code Mass. Regs. § 58.2.1 (6) (b) 8 (1993), which states: "A process which does not produce a finished product, but constitutes an essential and integral part of a total manufacturing process, is manufacturing. A process which is a practical and necessary step in the production of a finished article for sale is an essential and integral part of a total manufacturing process."

*supra* at 581, we held that the taxpayer's business of convert-ing cast off pipe, boilers, plumbing fixtures, automobile parts, refrigerators, and other metal items into compressed and baled scrap metal of various grades involved sufficient change and refinement to constitute manufacturing. Similarly, we have held the scouring of raw waste wool into wool ready to be spun into thread, cloth, or rugs to be an essential and inte-gral part of the manufacturing of textiles, *Assessors of Boston* v. *Commissioner of Corps. & Taxation, supra* at 748, as was the processing of raw wood into cut lumber, "a product more refined and specialized in use than the raw material." *Joseph T. Rossi Corp.* v. *State Tax Comm'n, supra* at 182. Further, we have held the production of electricity to involve "manufacture." *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 565 (1956).

In *Tilcon-Warren Quarries, Inc.* v. *Commissioner of Reve-nue,* 392 Mass. 670, 673 (1984), on the other hand, we held that the taxpayer's business of extracting pieces of rock from the ground and crushing them into usable sizes was not manufacturing, because the process did not transform the source material " 'into an article or a product of substantially different character . . . even though the processing increase[d] the value [and] usefulness of the product.' " *Id.,* quoting *So-lite Corp.* v. *County of King George,* 220 Va. 661, 665 (1980). We have also held that a computer time-sharing system, whereby information provided by a customer is manipulated by computer software, is "the transmission or manipulation of knowledge or intelligence," and properly classified as a ser-vice rather than a manufacturing process. *First Data Corp.* v. *State Tax Comm'n,* 371 Mass. 444, 448 (1976). Similarly, the transformation of sound waves over telephone lines, *Assessors of Springfield* v. *Commissioner of Corps. & Taxation,* 321 Mass. 186, 191 (1947), and light waves to television transmit-ters, *Westinghouse Broadcasting Co.* v. *Commissioner of Reve-nue,* 382 Mass. 354, 357 (1981), does not constitute "manufac-turing."

Houghton transforms ideas, art, information, and photo-graphs, by application of human knowledge, intelligence, and skill, into computer disks, ready for use by independent print-ers, containing an immense amount of information in a highly organized form. We have never required that source materials be tangible. See *First Data Corp.* v. *State Tax Comm'n, supra*

at 446, and cases cited ("If it be objected that the definition [of manufacturing] contemplates corporeal or tangible input and output, the taxpayer can cite cases that may read to the contrary — those which consider the production of electricity to involve manufacture"). Cf. *Westinghouse Broadcasting Co.* v. *Commissioner of Revenue, supra* at 358 (quoting the Appellate Tax Board: "Westinghouse may not be denied manufacturing status merely because its end product is intangible"). The work Houghton does approaches, to the extent humanly possible, creation ex nihilo; it is quite different from the mere manipulation of information and electric currents that we discussed in *First Data Corp.* v. *State Tax Comm'n, supra* at 447-448 (manipulation of computer data), *Westinghouse Broadcasting Co.* v. *Commissioner of Revenue, supra* at 355-356 (transformation of light into television signals), and *Assessors of Springfield* v. *Commissioner of Corps. & Taxation, supra* at 189, 191 (transmission of sound waves). We agree with the board's conclusion that Houghton's operations "produce a significant degree of change and refinement to the materials involved and that these are essential and integral steps in the manufacture of conventional books."

The commissioner argues that Houghton's activities to some extent resemble those of a furniture designer who produces designs used by others to build furniture, or an author who writes and sells a manuscript to a publisher. In each case there is a creative process constituting a sine qua non of subsequent production, yet no one would argue that the author or designer should be classified as a manufacturer. While we agree, in principle, with this general statement, there is a reasonable basis for distinguishing Houghton's activities. The documents produced by the author and designer are valued solely for their artistic and intellectual content. Houghton's completed computer disks and CD ROM tapes, on the other hand, although having intellectual content, are valuable principally because they are physically useful in making the finished product. Houghton's activity is similar to the dress cutting "markers" which we said were (albeit in the context of the sales and use tax) used "directly and exclusively" in the manufacture of dresses in *Commissioner of Revenue* v. *Fashion Affiliates, Inc.,* 387 Mass. 543, 545-546 (1982), the "composition proofs" we held exempt from sales and use tax in *Houghton Mifflin Co.* v. *State Tax Comm'n,* 373 Mass.

772, 773, 776 (1977), and the linotype we held similarly exempt in *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation*, 358 Mass. 563, 572-573 (1971). Indeed, the commissioner does not argue that the maker of corporeal printing plates of the type discussed in *Courier* would not be a manufacturer. We believe that the difference between printing plates and the printer-ready computer disks produced by Houghton is one of kind, not of quality. Therefore, we conclude that Houghton's activities constitute "manufacturing" within the "matrix of intention and expectation" of G. L. c. 63, § 38C, *Westinghouse Broadcasting Co.* v. *Commissioner of Revenue, supra* at 358, and that Houghton is entitled to the manufacturer's investment tax credit of G. L. c. 63, § 31A, so long as its manufacturing operations are " 'important and material' . . . when measured against the entire operations of the corporation." *Fernandes Super Mkts., Inc.* v. *State Tax Comm'n*, 371 Mass. 318, 322 (1976), quoting *Assessors of Boston* v. *Commissioner of Corps. & Taxation*, 323 Mass. 730, 746 (1949).

The commissioner draws our attention to a Maryland case, *H.M. Rowe Co.* v. *Tax Comm'n*, 149 Md. 251 (1925). "Decisions of other jurisdictions are not likely to have direct bearing because of the peculiarities of the various taxing schemes." *Westinghouse Broadcasting Co.* v. *Commissioner of Revenue, supra.*[6]

Houghton's compilation of information, photographs, and text, into proofs, edited, refined, and ultimately transferred to disk or CD ROM, transcends the mere manipulation of information and constitutes a substantial and integral step in the process of manufacturing books. The disks and CD ROMs

---

[6]The commissioner further relies on two decisions of the board. In *Assessors of Sudbury* v. *Commissioner of Corps. & Taxation*, 1 Mass. App. Tax Bd. Rep. 21 (1981), the board held that a taxpayer who received, edited, and retyped advertisements for its "want-advertiser" before sending the manuscript to a printer was not a manufacturer. The basis for its conclusion was that the preparation of the advertisements for publishing did not significantly change any material and did not constitute a substantial and integral part of any manufacturing operation. Similarly, in *Beckler Press, Inc.* v. *Commissioner of Revenue*, 4 Mass. App. Tax Bd. Rep. 87 (1984), the taxpayer arranged typed manuscripts into proper format for a printer, but did not edit or significantly change the material. We agree with the board that the nature of Houghton's complex transformation of ideas, text, and artwork into computer discs and CD ROMs is significantly different from the services provided by the taxpayers in the above cases.

possess a new nature and are adapted for a new use, namely the printing and binding of books. The board did not err as a matter of law.

*Decision of the Appellate Tax*
*Board affirmed.*