718       67 Mass. App. Ct. 718 (2006)

Lowney *v.* Commissioner of Revenue.

CHARLES LOWNEY & another[1] *vs.* COMMISSIONER OF
REVENUE.

No. 05-P-1353.

Suffolk. September 13, 2006. - November 9, 2006.

Present: RAPOZA, C.J., GELINAS & GRAINGER, JJ.

*Taxation,* Excise, Abatement. *Statute,* Construction.

This court concluded that G. L. c. 64G, by its terms, does not impose a room
occupancy excise tax on rent paid by individuals who remain longer than
ninety consecutive days as guests in a hotel, motel, lodging house, or other
similar establishment, and therefore, the Appellate Tax Board erred in af-
firming a ruling by the Commissioner of Revenue denying the plaintiffs'
application for abatement of taxes that they had not collected from
individuals who stayed longer than ninety days at the plaintiffs' motel.
[720-724]

APPEAL from a decision of the Appellate Tax Board.

*Timothy J. Lowney* for the plaintiffs.

*Maryanne Reynold Martin,* Assistant Attorney General, for
Commissioner of Revenue.

GRAINGER, J. At issue in this case of first impression is the ap-
plication of the room occupancy excise (tax), G. L. c. 64G, to
the first ninety days of rentals that exceeded a ninety-day period.
Plaintiffs, Charles and Irene Lowney, own and operate the Car-
leton Circle Motel (motel) in Falmouth. They appeal the deci-
sion of the Appellate Tax Board affirming the denial of their ap-
plication for tax abatement by the Commissioner of Revenue.

*Background.* The Lowneys purchased the motel in 1986. The
motel has thirty-eight units, seventeen of which have kitchen-
ettes rendering them amenable to longer term housekeeping
rentals. Clientele comprise both short-term, mostly summertime,
guests and long-term guests, who live at the motel for many

---

[1] Irene Lowney.

months, receive mail addressed to them there, and generally use it as their residence. The Lowneys used a different form of rental agreement for those guests who indicated they would be staying for longer periods. In contrast to short-term guests, long-term guests were required to provide security deposits and references, but enjoyed lower rates.

The length of time that guests remain at the motel is rendered relevant to the tax by the definition of "occupancy" in c. 64G. Section 3 of G. L. c. 64G imposes a tax on "the transfer of occupancy" of a room in a motel.[2] The definition of "occupancy" appears in G. L. c. 64G, § 1(*g*), and, in pertinent part, is described as possession or the right to possession of premises "for a period of ninety consecutive calendar days or less."[3]

From 1986 until 1993, the Lowneys collected the tax from each guest for the entire rental period or for ninety days, whichever was less. In 1993, they changed their practice to collect the tax only from guests who stayed for ninety days or fewer.[4]

*Proceedings below.* After an audit conducted in 1999, the

---

[2]General Laws c. 64G, § 3, as amended by St. 1988, c. 31, § 3, provides in relevant part:

> "An excise is hereby imposed upon the transfer of occupancy of any room or rooms in a bed and breakfast establishment, hotel, lodging house, or motel in this commonwealth by any operator . . . ."

[3]General Laws c. 64G, § 1(*g*), as amended through St. 1989, c. 341, § 55, defines "occupancy" as:

> "[T]he use or possession, or the right to the use or possession, of any room or rooms in a bed and breakfast establishment, hotel, lodging house or motel designed and normally used for sleeping and living purposes, or the right to the use or possession of the furnishings or the services and accommodations, including breakfast in a bed and breakfast establishment, accompanying the use and possession of such room or rooms, for a period of ninety consecutive calendar days or less, regardless of whether such use and possession is as a lessee, tenant, guest or licensee."

[4]The reason for the change in practice plays no part in our decision. Charles Lowney testified that he was informed by unidentified District Court officials that guests who stayed for longer than ninety days were classified as "residents" (rather than occupants) and therefore not subject to his attempt to

Department of Revenue (department) assessed the Lowneys for the tax that they had not collected for the first ninety days from individuals who stayed longer than ninety days during the period of September, 1996, through March, 1999. The Lowneys filed an application for abatement, which the department denied. The Appellate Tax Board (board) affirmed the denial. The board based its decision on two independent findings: first, the Lowneys had failed to prove that any renters had stayed longer than ninety days, and second, the statutory scheme, as interpreted in regulations issued by the Commissioner of Revenue (commissioner), required collection of the tax for the first ninety days of every rental regardless of the total length of the stay.

*Discussion.* We will not overturn a finding of the board unless it is "not supported by substantial evidence or is based on an error of law." *M & T Charters, Inc.* v. *Commissioner of Rev.*, 404 Mass. 137, 140 (1989). We review the sufficiency of the evidence to determine "whether a contrary conclusion is not merely a possible but a necessary inference from the findings." *Kennametal, Inc.* v. *Commissioner of Rev.*, 426 Mass. 39, 43 (1997), cert. denied, 523 U.S. 1059 (1998), quoting from *Commissioner of Rev.* v. *Houghton Mifflin Co.*, 423 Mass. 42, 43 (1996). We address initially the board's finding that the Lowneys "did not . . . offer into evidence any long-term agreements for periods in excess of ninety consecutive days" nor did they offer proof of renters who actually stayed for periods in excess of ninety consecutive days. If this finding were supported, we would not reach the issue of tax liability incurred for the first ninety days of longer stays. However, the record contains numerous uncontradicted examples of renters who stayed in excess of ninety days, including those listed on the very audit sheets, entitled "Non-Taxed Rooms," issued by the department.[5] Additionally, Charles Lowney testified that some

___

file criminal complaints for unpaid rent or bad checks. Accordingly, he concluded that the tax did not apply to these individuals.

[5]As examples, the audit sheets show the following periods of rental:

Morgan, September 9, 1996 to April 2, 1997 (203 days);
Cardoza, September 5, 1996 to May 4, 1997 (241 days);

tenants stayed for several years.[6] Accordingly, the board's find-ing that there was no evidence of tenants who exceeded ninety days is in error, and cannot provide a proper basis to dispose of this matter. We turn therefore to the meaning of G. L. c. 64G, and the circumstances that trigger the tax under that statue.

As stated above, the parties' dispute centers on their interpretation of the phrase in § 1(*g*) defining occupancy as "a period of ninety consecutive calendar days or less." The Lowneys argue that possession for ninety-one consecutive days or longer falls outside the statutory definition of occupancy, and under such circumstances no taxable event has occurred. The department claims, to the contrary, that the statute does not preclude the qualification of a period of ninety consecutive days as "occupancy" even if that period is part of a longer stay. We conclude that the phrase "a period of ninety consecutive calendar days or less" comprehends a clear beginning and a clear end, the latter of which occurs before or on the ninetieth day. The department's interpretation, which is that the statutory "period" is equally capable of being perceived to exist within a longer number of consecutive days (in effect, any period longer than the length set by the statute), is, at best, strained. While a straightforward reading of the statute is a sufficient basis to reverse the decision below, we recognize that the interpretation of an agency charged with the administration and implementa-tion of a statutory scheme is entitled to consideration. We therefore turn to principles of statutory interpretation.

The first point of inquiry, legislative history, provides no guidance. We are not aware of any legislative history bearing on this issue, and the parties have not cited any. It is well settled, however, that taxing statutes are to be construed strictly against the taxing authority. "The right to tax must be plainly conferred by the statute. It is not to be implied." *McCarthy* v. *Commis-*

---

Connolly, September 6, 1996 to May 16, 1998 (617 days);

Kempton, September 14, 1996 to February 21, 1998 (525 days);

Greg, April 6, 1996 to December 27, 1996 (265 days); and

Guess, June 3, 1996 to October 26, 1996 (145 days).

[6]Although the audit sheets in the record span only 1996 to 1998, Charles Lowney's testimony is supported by inclusion in the audit sheets of two ten-ants, Connolly and Kempton, each of whose residencies lasted more than one year.

*sioner of Rev.,* 391 Mass. 630, 632-633 (1984), quoting from *Cabot* v. *Commissioner of Corps. & Taxn.,* 267 Mass. 338, 340 (1929). Furthermore, "all doubts [are to be] resolved in favor of the taxpayer." *Commissioner of Rev.* v. *AMIWoodbroke, Inc.,* 418 Mass 92, 94 (1994), quoting from *Dennis* v. *Commissioner of Corps. & Taxn.,* 340 Mass. 629, 631 (1960). See *Commissioner of Rev.* v. *Oliver,* 436 Mass. 467, 473 (2002) (relying on "the settled principles that the authority to tax must be plainly conferred and that any ambiguity must be resolved in favor of the taxpayer").

At the same time, as noted above, we recognize and reaffirm the important principle that the interpretation of the commissioner, as the individual charged with administration of the statute and collection of tax revenues thereunder, is customarily entitled to great weight. See *Massachusetts Elec. Co.* v. *Massachusetts Commn. Against Discrimination,* 375 Mass. 160, 169-170 (1978). The commissioner's interpretation in this instance, however, relates to more than implementation or administration of the statutory scheme. It is a determination of the underlying basis of taxability created by the Legislature, and we conclude that the commissioner's interpretation imputes added terms to G. L. c. 64G's plain language defining the activity that triggers a tax.[7] In such a case, where a term in a statute is allegedly ambiguous, courts have found that an agency's interpretation of a statute is, at best, entitled to "some deference," *Macy's East, Inc.* v. *Commissioner of Rev.,* 441 Mass. 797, 806, cert. denied, 543 U.S. 957 (2004), albeit not "the 'great weight' given to a duly promulgated administrative regulation which lends specificity to a broad statutory scheme." *Xtra, Inc.* v. *Commissioner of Rev.,* 380 Mass. 277, 282 (1979), citing *Massachusetts Elec. Co.* v. *Massachusetts Commn. Against Discrimination, supra.* Alternatively phrased, where the commissioner has spoken to a particular issue, as was done here

---

[7]In effect, the commissioner's determination in this case, upheld by the board, adds the phrase "whether or not such period is part of a longer period of consecutive use or possession" (or equivalent language) to G. L. c. 64G, § 1(*g*). "A court may not add words to a statute that the Legislature did not put there." *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Ct. Dept.,* 439 Mass. 352, 355 (2003).

in both a regulation and a technical information release,[8] courts have found that the regulatory position is "entitled to *some deference* because the Legislature has delegated to the commissioner the responsibility of administering, interpreting, and enforcing the State tax laws, and resolving statutory ambiguity" (emphasis added). *Macy's East, Inc.* v. *Commissioner of Rev.*, *supra.* In other cases, where the statute has been found to be unambiguous, courts have declined to accord any deference whatsoever to the department's regulation, reasoning that "a regulation that purports to tax an item that the statute itself does not tax is itself invalid." *Commissioner of Rev.* v. *Oliver*, 436 Mass. at 474, citing *Lowell Sun Publishing Co.* v. *Commissioner of Rev.*, 397 Mass. 650, 652 (1986) (regulations concluded to be invalid where they imposed taxes "beyond the authorization of the statute"). See *Atlanticare Med. Center* v. *Commissioner of the Div. of Med. Assistance*, 439 Mass 1, 6 (2003), quoting from *Massachusetts Hosp. Assn.* v. *Department of Med. Security*, 412 Mass. 340, 346 (1992) ("an 'incorrect interpretation of a statute . . . is not entitled to deference' ").

We note additionally that the commissioner's own public pronouncements on the issue have been inconsistent. In contrast to the commissioner's recitation of illustrative fact patterns contained in 830 Code Mass. Regs. § 64G.1.1 (1993), the department's Guide to Massachusetts Tax and Employer Obligations (Guide),[9] in a discussion about room occupancy tax, states that "[t]he total tax rate is applied only to the rent received from an individual who occupies the lodgings for ninety consecutive days or less." In contrast to the other interpretations, which speak of taxing the "first ninety consecutive days"

---

[8]"For the first ninety consecutive days, the transfer of occupancy of the rooms [in an illustrative example] is subject to the room occupancy excise. Occupancy after the first ninety consecutive days is not subject to the excise." 830 Code Mass. Regs. § 64G.1.1 (1993). "The operator [in an illustrative example] is required to collect the excise on the rental charges . . . for the first ninety consecutive days. No excise is imposed on the rent for the continuing occupancy of these rooms after the ninetieth day." Technical Information Release 79-5 (July 9, 1979).

[9]Available only at http://www.dor.state.ma.us/business/taxguide/room.htm (last visited November 8, 2006). At oral argument, this court invited both parties to submit supplemental written arguments addressing the Guide, and the commissioner availed himself of that opportunity.

of occupancies that continue beyond that length, the Guide restricts imposition of the tax "only" to rent paid by individuals who leave before the ninety-first day. While the Guide does not rise to the level of a department regulation, it nevertheless reflects the weakness of the contrary position asserted by the commissioner in the face of the language of the statute.[10]

Finally, the commissioner argues that the Lowneys, as taxpayers, have the burden of proving entitlement to an abatement of the tax. See *Towle* v. *Commissioner of Rev.*, 397 Mass. 599, 603 (1986). A taxpayer's burden to prove entitlement to an abatement normally arises where the existence of the tax itself is not in dispute, but rather the valuation of property or the categorization of certain activity is at issue.[11] See *Boston* v. *Second Realty Corp.*, 9 Mass. App. Ct. 282, 284 (1980) (abatement is proper avenue for relief, rather than declaratory judgment or injunction, where amount of tax and not existence of tax is in dispute). Here, the Lowneys have demonstrated that the tax was not properly assessed under the language of G. L. c. 64G, and therefore they are entitled to an abatement. See *Dennis* v. *Commissioner of Corps. & Taxn.*, 340 Mass. at 631-632.

*Conclusion.* General Laws c. 64G, by its terms, does not impose a room occupancy excise on rent paid by individuals who remain longer than ninety consecutive days as guests in a hotel, motel, lodging house or other similar establishment listed

---

[10]See *Massachusetts Elec. Co.* v. *Massachusetts Commn. Against Discrimination*, 375 Mass. at 170 n.5, where the Supreme Judicial Court noted the absence of inconsistent interpretations in upholding an agency's decision, and contrasted the United States Supreme Court's rejection of an administrative agency's ruling in *General Elec. Co.* v. *Gilbert*, 429 U.S. 125, 142-143 (1976), where the agency's interpretation was not entitled to deference because, among other reasons, it contradicted an earlier position taken by the same agency.

[11]See, e.g., *Macy's East, Inc.* v. *Commissioner of Rev.*, *supra* at 803-804 (abatement denied where taxpayer claimed deduction after acquiring subsidiaries that had previously overpaid taxes); *Boston Professional Hockey Assn.* v. *Commissioner of Rev.*, 443 Mass 276, 283-288 (2005) (abatement denied because out-of-State revenues closely related to in-State business); *Morton Buildings, Inc.* v. *Commissioner of Rev.*, 43 Mass. App. Ct. 441, 444-446 (1997) (abatement allowed where taxpayer successfully claimed raw materials had been converted into building components before entering Commonwealth); *NYNEX Corp.* v. *Commissioner of Rev.*, 61 Mass. App. Ct. 575, 577-581 (2004) (abatement denied for holding company that claimed losses of subsidiaries).

in the definition of "occupancy." There is no basis to depart from the straightforward language of the statute. Accordingly, the decision of the board is reversed. The record is unclear whether the Lowneys were properly assessed the unpaid room occupancy excise for individuals who remained at the motel for ninety consecutive days or fewer. The matter is remanded to the board for a determination of the tax, if any, due in accordance with this opinion.

*So ordered.*