70 Mass. App. Ct. 853 (2007)                                    853

South Street Nominee Trust *v.* Board of Assessors of Carlisle.

South Street Nominee Trust *vs.* Board of Assessors of
Carlisle.

No. 06-P-1586.

Suffolk. October 16, 2007. - December 19, 2007.

Present: Cowin, Katzmann, & Meade, JJ.

*Taxation,* Real estate tax: abatement, Forest products. *Statute,* Construction.

Discussion of G. L. c. 61, which governs the classification and taxation of forest land [854-855], and of the standard of review and rules of construction governing this court's review of a decision of the Appellate Tax Board [855-856].

The Appellate Tax Board erred in upholding the refusal of a local board of assessors to abate a withdrawal tax assessed on the taxpayer's land pursuant to G. L. c. 61, § 7, where St. 1981, c. 768, § 2, which addresses the applicability of the amendments to G. L. c. 61 set forth in St. 1981, c. 768, § 1, exempted the plaintiff's property from imposition of the tax. [856-860]

Appeal from a decision of the Appellate Tax Board.

*Rosemary Crowley (David J. Martel* with her) for the taxpayer.

*John Richard Hucksam, Jr.,* for board of assessors of Carlisle.

Meade, J. South Street Nominee Trust (taxpayer) appeals from a decision of the Appellate Tax Board (board) upholding the refusal of the board of assessors of the town of Carlisle (town) to abate a withdrawal tax assessed on its land pursuant to G. L. c. 61, § 7. On appeal, the taxpayer argues that St. 1981, c. 768, § 2, effective January 2, 1982 (section 2), which addresses the applicability of the amendments to G. L. c. 61 set forth in St. 1981, c. 768, § 1, exempts its property from imposition of the withdrawal tax. We agree and reverse.

1. *Background.* The taxpayer owns four parcels of real estate (subject property) within the town. The town's assessment of a withdrawal tax on the subject property gave rise to this appeal. From January 1, 1978, until December 31, 2002, the subject property had been continuously classified as "forest land"

pursuant to G. L. c. 61. During that time, the subject property was governed by three successive forest management plans, spanning the following dates: January 1, 1978, to December 31, 1982; January 1, 1983, to December 31, 1992; and January 1, 1993, to December 31, 2002.[1] By letter dated June 25, 2002, the taxpayer informed the town of its intention to withdraw the subject property from forest land classification effective January 1, 2003.[2] In response, the town assessed a withdrawal tax of $216,300.06 upon the subject property pursuant to G. L. c. 61, § 7. Based on its claim that section 2 exempts its property from the withdrawal tax, the taxpayer applied to the town for an abatement of the tax, which it paid under protest. Following the town's failure to act on its application, the taxpayer filed a petition with the board seeking relief from the town's refusal to abate the tax.[3] The board's decision upholding the imposition of the withdrawal tax entered on December 13, 2004. The taxpayer appeals from that decision.

2. *Discussion.* a. *Statutory scheme and history.* The classification and taxation of forest land has been governed by statute for over ninety years. St. 1914, c. 598. From its inception, the statute, now codified as G. L. c. 61, has enabled landowners to voluntarily apply for and receive a forest land classification for eligible property devoted to the growth of forest products, thus making land so classified subject to lower property tax rates. Since the 1969 amendments to G. L. c. 61, St. 1969, c. 873, § 1, land so classified is subject to the oversight of the State forester, who monitors the use of the land to ensure the maintenance of the

---

[1]As defined by G. L. c. 61, § 1, inserted by St. 1981, c. 768, § 1, a forest management plan is "a completed copy of a form provided by the state forester executed by the owner and the state forester . . . that provides for a ten year program of forest management . . . ." Since the 1981 amendments, the duration of forest management plans has been ten years, an increase of five years from the previous version of the statute.

[2]An owner of property that is classified and taxed as forest land cannot sell or convert the land to another use, i.e., residential, industrial, or commercial, without first notifying the city or town within which the land is located. G. L. c. 61, § 8, as amended by St. 1981, c. 768, § 1.

[3]Pursuant to G. L. c. 60, § 3, an appeal may be made to the board within thirty days after the date of notice or, as occurred here, within three months of the date of the application for abatement. See *Cowls* v. *Assessors of Shutesbury*, 34 Mass. App. Ct. 944 (1983).

70 Mass. App. Ct. 853 (2007)                                    855

South Street Nominee Trust *v.* Board of Assessors of Carlisle.

woodland vegetation in accordance with the forest land classification. G. L. c. 61, § 2, as amended by St. 1981, c. 768, § 1. As part of this oversight, the property must be certified as being in compliance with all forest land classification requirements at the beginning of each new forest management plan. *Ibid.* Failure to obtain such certification results in the loss of the property's forest land classification. *Ibid.*

Effective January 2, 1982, G. L. c. 61 was substantially amended by chapter 768 of the Acts and Resolves of 1981. Relevant to our discussion, the 1981 amendment significantly increased the withdrawal tax. G. L. c. 61, § 7, as amended by St. 1981, c. 768, § 1.[4] The 1981 amendment also included certain provisions regarding land then currently classified under G. L. c. 61. Section 2 of chapter 768 of the Acts and Resolves of 1981 provides in relevant part:

> "Section one of this act shall not apply to land classified prior to the effective date of this act until the expiration of the term of the forest management plan governing such land or until one year after the withdrawal of such land from classification, whichever period is longer. Notwithstanding the provisions of any laws to the contrary, the owner of such land, prior to the end of said period, may elect to remove such land from classification without imposition of a withdrawal tax or may elect to apply for classification of such land under the provisions of section one . . . ."

The precise meaning of this rather enigmatic language is the crux of the parties' dispute.

b. *Standard of review and rules of construction.* We will leave undisturbed the board's construction of section 2 "unless it is 'not supported by substantial evidence or is based on an error of law.' " *Lowney* v. *Commissioner of Rev.,* 67 Mass. App. Ct. 718,

---

[4]This tax is assessed upon declassification for that tax year and for each of the four immediately preceding tax years, in an amount equal to the difference between the taxes actually paid or payable on the forest land and the taxes that would have been paid or payable if the land had not been classified as forest land, plus interest. G. L. c. 61, § 7. Prior to 1982, this tax was limited to a maximum charge of $200 per acre. The 1981 amendment replaced that capped tax with an uncapped one. *Ibid.*

856          70 Mass. App. Ct. 853 (2007)

South Street Nominee Trust *v*. Board of Assessors of Carlisle.

720 (2006), quoting from *M & T Charters, Inc.* v. *Commissioner of Rev.*, 404 Mass. 137, 140 (1989). See *Lasell Village, Inc.* v. *Assessors of Newton*, 67 Mass. App. Ct. 414, 420 (2006) (the Appellate Tax Board's decision on whether property is exempt from taxation will not be reversed if it is based on substantial evidence and a correct application of the law). We also recognize the board's expertise in tax matters, which prompts us to give its decision "some deference." *Koch* v. *Commissioner of Rev.*, 416 Mass. 540, 555 (1993), quoting from *McCarthy* v. *Commissioner of Rev.*, 391 Mass. 630, 632 (1984).

"Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent." *Commonwealth* v. *Mandell*, 61 Mass. App. Ct. 526, 528 (2004), quoting from *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 285 (1996). See *Okerman* v. *VA Software Corp.*, 69 Mass. App. Ct. 771, 776 (2007). However, where, as here, the statutory language is not free of ambiguity, courts are bound to apply the "well-established principle that tax laws are to be strictly construed, and ambiguities in tax statutes are to be resolved in favor of the taxpayer." *Commissioner of Rev.* v. *Molesworth*, 408 Mass. 580, 581 (1990). See *Assessors of Brookline* v. *Prudential Ins. Co.*, 310 Mass. 300, 313 (1941), quoting from *Hemenway* v. *Milton*, 217 Mass. 230, 233 (1914) ("Tax laws 'should be construed and interpreted as far as possible so as to be susceptible of easy comprehension and not likely to become pitfalls for the unwary' "); *Lowney* v. *Commissioner of Rev.*, *supra* at 722. In fact, "all doubts [are to be] resolved in favor of the taxpayer." *Commissioner of Rev.* v. *AMIWoodbroke, Inc.*, 418 Mass. 92, 94 (1994), quoting from *Dennis* v. *Commissioner of Corps. & Taxn.*, 340 Mass. 629, 631 (1960). Significantly, this court has indicated that "[t]hat principle has particular applicability, we think, to a penalty assessment." *Chirillo* v. *Commissioner of Rev.*, 25 Mass. App. Ct. 98, 103 (1987). In light of these important tenets, we differ with the board's construction of section 2.

c. *The statutory language.* Section 2 does not readily lend itself to certain construction. Indeed, it is susceptible to multiple interpretations, each of which is not wholly unreasonable, but

none of which perfectly harmonizes all of the statutory language.[5] The key area of uncertainty is the duration of the period during which the statute allows a taxpayer to exercise a tax-exempt withdrawal of pre-1982 classified forest land. As defined by the first sentence of § 2, this period extends until the later of two possible closing dates: the expiration of the term of the forest management plan existing at the time that the 1981 amendment became effective, or one year after the withdrawal of such land from classification. The parties agree that the first of these two possible closing dates occurred on December 31, 1982. However, with respect to the second, there is considerable dispute.

The taxpayer argues that the language "until one year after the withdrawal of such land from classification" creates a right to a tax-exempt withdrawal of pre-1982 classified forest land which does not expire until exercised. The board disagreed, and interpreted the statute as permitting the taxpayer to exercise a tax-exempt withdrawal of its pre-1982 classified forest land no later than December 31, 1982, the expiration date of the taxpayer's forest management plan in existence when the 1981 amendment became effective. It held that the second sentence of section 2 required the taxpayer to choose between exercising its right of tax-exempt withdrawal prior to or at the expiration of its existing forest management plan, or waiving that right by recertifying its forest land under a new forest management plan.[6]

To reach this conclusion, the board took the actual statutory language giving the taxpayer until "one year after the withdrawal of such land from classification" and added to it the condition

[5]For example, section 2 is afflicted by the apparently anomalous provision that its language allows an owner of pre-1982 classified forest land to withdraw such land from classification without imposition of a withdrawal tax provided he does so within one year after he withdraws such land from classification. However, the condition that something be done within one year of whenever it is done is no condition at all. Neither of the parties' constructions, nor any of our own, is able to fully harmonize this language with the rest of section 2.

[6]In its findings of fact and report dated July 26, 2006, the board concluded that the taxpayer "could have timely withdrawn from classification before the expiration of the first Certificate. However, [the taxpayer] reclassified the subject property under the second Certificate. . . . [By so doing], the subject property was governed by [the newly-amended] c. 61, including the withdrawal penalty tax provision of § 7."

that such withdrawal must occur prior to the expiration of the term of the forest management plan existing at the time that the 1981 amendment became effective. The board did so on the purported basis that this implied condition reconciled the two sentences of the statute with one another and with the assumed Legislative intent. As a result, the board effectively rewrote the first sentence of section 2 to provide: "Section one of this act shall not apply to land classified prior to the effective date of this act until the expiration of the term of the forest management plan governing such land or until one year after the withdrawal of such land from classification, [provided such withdrawal occurs prior to the expiration of the term of such forest management plan], whichever is longer." We, however, are required to resist the urge to add language "to a statute that the Legislature did not put there." *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Ct. Dept.*, 439 Mass. 352, 355 (2003). See *Okerman* v. *VA Software Corp.*, 69 Mass. App. Ct. at 777-778; *Lowney* v. *Commissioner of Rev.*, 416 Mass. at 722 n.7.

We are aware of no legislative history providing guidance as to the intended duration of the tax-exempt withdrawal period created by section 2. That asserted by the parties is both unsupported and unpersuasive.[7] In addition, we are not persuaded that the Department of Revenue Informational Guideline (Release No. 82-209, entitled "Chapter 768 of the Acts of 1981") (guideline) lends proper support to the board's argument. The guideline summarizes the impact of the 1981 amendment on G. L. c. 61, and states that a withdrawal tax will not be imposed on land classified under chapter 61 prior to the effective date "if the owner elects to remove such land from classification prior to or at the expiration of the current certification period." The guideline therefore interprets the tax-exempt withdrawal period as ending upon the expiration of the forest management plan existing at the time of the 1981 amendment. As stated above, we believe that interpretation to be inconsistent with the statutory language

---

[7]Other than the general proposition that the forest land classification program under chapter 61 is designed to encourage the preservation and enhancement of the Commonwealth's forests through the use of property tax incentives and disincentives, we think the more specific statements of legislative intent presented by the parties to be mere conjecture.

70 Mass. App. Ct. 853 (2007)                    859

South Street Nominee Trust *v.* Board of Assessors of Carlisle.

since it fails to give any meaning to the portion of section 2 that clearly contemplates a time period capable of extending beyond the expiration of the existing forest management plan, i.e., "or until one year after the withdrawal of such land from classification, whichever period is longer."[8] As such, we accord this interpretation no deference as it is inconsistent with the language of section 2. See *Boston Police Superior Officers Fedn.* v. *Labor Relations Commn.*, 410 Mass. 890, 892 (1991) (no deference when agency commits error of law). In fact, because we are required to construe the statute strictly against the taxing authority, and because "[t]he right to tax must be plainly conferred by the statute . . . [, and not] implied," we decline to accept the guideline as determinative of the issue. See *McCarthy* v. *Commissioner of Rev.*, 391 Mass. at 632-633.

Furthermore, because the second sentence of section 2 uses the word "classification" as opposed to "certification," the board's construction relies upon the premise that post-1982 recertification of classified forest land pursuant to a new forest management plan constitutes "apply[ing] for classification of such land under" G. L. c. 61. However, chapter 61 does not use the terms interchangeably to support such a construction. "Certification" is defined by the statute as "approval of a forest management plan by the state forester." G. L. c. 61, § 1, inserted by St. 1981, c. 768, § 1. It is the State forester's verification that classified forest land is being managed under an approved forest management plan. Although not expressly defined by the statute, "classification" is defined by a regulation to mean "the tax status attaching by operation of law to all land qualifying under [chapter 61,] which qualification is duly certified by the State Forester." 304 Code Mass. Regs. § 8.02 (1996). It is a designation of tax status eligibility which occurs separately from the act of certification.

The distinction that the Legislature drew between the two is evident in the various provisions of chapter 61, which treat the terms, though interrelated, as being separate.[9] Importantly, not

---

[8]In interpreting the meaning of "said period," the Department of Revenue was not at liberty to select from the various portions of the language employed by the Legislature. Rather, it was required, as are we, to give effect to all of the statutory language.

[9]One such provision states that "[l]and shall be removed from classification

only does this language treat the two terms as being clearly distinct, but it also contemplates recertification as providing for the continuation of an existing classification status, as opposed to the commencement of a new classification status. We think this language indicative of the Legislature's intention that recertification of forest land under each successive forest management plan does not constitute application for classification of land. Rather, property already classified as forest land remains so classified unless the property owner fails to file a new certification.

Having resolved the seemingly irreconcilable statutory language in section 2 in favor of the taxing authority on such a basis, it is apparent that the board failed to give effect to the important principle that ambiguities in a tax statute must be resolved in the taxpayer's favor. See *Commissioner of Rev.* v. *Molesworth*, 408 Mass. at 581. This was error. Because of this, we reject the town's contention that the deference customarily afforded to the board's interpretation of a statutory provision should be controlling in this case. We accord no deference to a decision of the board that is based on an error of law. "It is enough to recall that, when reviewing such a decision, 'the sole question before us is whether the [board] erred as a matter of law,' *Commissioner of Rev.* v. *Houghton Mifflin Co.*, 423 Mass. 42, 43 (1996), and that an appellate court has plenary power of de novo review of all questions of law . . . including questions of law involving statutory construction." *Martha's Vineyard Land Bank Commn.* v. *Assessors of W. Tisbury*, 62 Mass. App. Ct. 25, 27 n.3 (2004). In these circumstances, the limited deference we owe to the board's decision is eclipsed by the appellate lenity we owe the taxpayer.

3. *Conclusion.* The board's decision upholding the town's refusal to abate the withdrawal tax on the subject property is

by the assessor unless, at least every ten years, the owner files with said assessor a new certification by the state forester." G. L. c. 61, § 2, inserted by St. 1981, c. 768, § 1. In another portion of the same section, it states that "all forest land . . . used for forest production shall be classified by the assessors as forest land upon written application sufficient for identification and certification by the state forester." *Ibid.* "Classification shall take effect on January first of the year following certification and taxation under this chapter . . . ." *Ibid.*

reversed. The withdrawal tax paid by the taxpayer shall be reimbursed to it by the treasurer of the town with interest at the rate provided in G. L. c. 62C, § 32. G. L. c. 61, § 7, as amended by St. 1981, c. 768, § 1.

*So ordered.*